[Civ. No. 49362. First Dist., Div. Four. Nov. 19, 1981.]

EVELYN M. RUSS, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant
and Respondent;
ROUND VALLEY UNIFIED SCHOOL DISTRICT, Real Party in
Interest and Respondent.

COUNSEL

David J. Rapport, Lester J. Marston and Pamela S. Williams for Plaintiff and Appellant.

George Deukmejian, Attorney General, Charlton G. Holland and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Respondent.

Diane K. Smith and Breon, Galgani & Godino for Real Party in Interest and Respondent.

OPINION

**RATTIGAN, Acting P. J.**—At pertinent times, appellant Evelyn M. Russ was employed by a public school district as a teacher's aide at an elementary school. When the school closed for the summer at the end of the 1977-1978 academic year, she applied to the Employment Development Department for unemployment compensation benefits claimed for a period in which she was out of work during the summer recess. After administrative proceedings to be described, respondent Unemployment Insurance Appeals Board (Appeals Board) rendered a decision holding that appellant was ineligible for the claimed benefits, by operation of Unemployment Insurance Code section 1253.3, subdivision (c), because she had been given "reasonable assurance" that she would be reem-

ployed by the school district when the 1978-1979 academic year commenced in the fall.[1]

Appellant challenged the decision by petitioning the superior court for a writ of administrative mandamus, pursuant to Code of Civil Procedure section 1094.5, and for declaratory relief. The cause was submitted on the record of the administrative proceedings. The court made findings of fact and conclusions of law adverse to appellant and

---

[1]Statutory citations are to the Unemployment Insurance Code except where indicated otherwise. Section 1253.3 appears in division 1 ("Unemployment And Disability Compensation," commencing with § 100). It applies in this case as last amended by a 1978 enactment which took effect on January 30, 1978. (Stats. 1978, ch. 2, § 80, pp. 42-43; *id.*, § 108, p. 52 [urgency clause]; see *id.*, p. 6 [enactment approved and filed January 30, 1978].) The statute was thus amended to provide in pertinent part as follows:

"1253.3. (a) Notwithstanding any other provision of this division, unemployment compensation benefits ... are payable on the basis of service to which Section 3309 (a)(1) of the Internal Revenue Code of 1954 applies, in the same amount, on the same terms, and subject to the same conditions as such benefits payable on the basis of other service subject to this division, *except as provided by this section.*

"(b) Benefits specified by subdivision (a) of this section based on service performed in the employ of ... any public entity as defined by Section 605, with respect to *service in an instructional, research, or principal administrative capacity for an educational institution* shall not be payable to any individual with respect to any week which begins during the period between two successive academic years or terms ..., if the individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

"(c) Benefits specified by subdivision (a) of this section based on service performed in the employ of ... any public entity as defined by Section 605, with respect to *service in any other capacity* than specified in subdivision (b) *for an educational institution* (other than an institution of higher education) shall not be payable to any individual with respect to any week which commences during a period between two successive academic years or terms if such individual performs such service in the first of such academic years or terms *and there is a reasonable assurance* that such individual will perform such service in the second of such academic years or terms.

" ...

"(e) For purposes of this section, 'institution of higher education' means an educational institution which is a college or university or ... [the equivalent] ... and [¶] ... [i]s a public or other nonprofit institution.

"(f) For purposes of this section, to the extent permitted by federal law, 'reasonable assurance' includes, but is not limited to, an offer of employment made by the educational institution, provided, that such offer is not contingent on enrollment, funding, or program changes...." (Italics added.)

Appellant was performing "service ... in the employ" of a "public entity ...," within the meaning of subdivisions (b) and (c) of section 1253.3 as thus amended, because the term "public entity" is defined to include "any school district" in this state. (§ 605, subd. (b).) Her employer (the District) is an "educational institution ... other than an institution of higher education," within the meaning of the same subdivisions, because it is not "a college or university." (See § 1253.3, subd. (e), quoted *supra.*)

entered a judgment denying the relief prayed. She appeals from the judgment.

### The Facts and the Administrative Proceedings

The administrative record supports the following recitals:

During the 1977-1978 academic year, appellant was employed by the Round Valley Unified School District (hereinafter District) as a teacher's aide at Round Valley Elementary School. She had been employed in that position for six successive academic years. She and other teacher's aides were employed by the District during the regular academic year only, and they were paid on an hourly basis. Their positions were financed by the State or federal governments exclusively, and they were not paid with funds of the District.

At the end of each successive academic year before 1978, the District had notified appellant that her employment was terminated but that she would be summoned back to work in the following fall (i.e., that she would be reemployed during the next academic year) if funds for her position became available. This had materialized, and she had been reemployed each fall. Early in May of the 1977-1978 academic year, the District circulated a memorandum to all teacher's aides (including appellant) which read in pertinent part as follows:

"To: All Teacher Aides ... Re: Notice—End Of School Year Funding[.] This is to notify you that as of June 2, 1978, there will be no work until funds for the next school year have been approved. At this time we expect to rehire you when school opens this next fall. Your insurance premiums will be paid by the district through the summer months. Notice of recall to work shall be by seniority and as available funds become verified."[2]

---

[2]This memorandum was written and circulated pursuant to Education Code section 45117, subdivision (a), which provides in pertinent part: "When, as a result of the expiration of a specially funded program, classified positions must be eliminated at the end of any school year, and classified employees will be subject to layoff for lack of funds, the employees to be laid off at the end of such school year shall be given written notice on or before May 29 informing them of their layoff effective at the end of such school year and of their displacement rights, if any, and reemployment rights. ..."

It is undisputed that appellant was a "classified employee" within the meaning of this section: i.e., that she held a "position not requiring certification qualifications." (See Ed. Code, § 33150, subd. (c); id., § 88004.) The section was enacted to provide for adequate layoff notices to the affected classified employees, and it was not ad-

Appellant stopped working when the 1977-1978 academic year ended in early June of 1978. She thereupon filed with the Employment Development Department (Department) a written application for unemployment compensation benefits. She checked a space on the application indicating that she was "no longer working" because she had been "laid off due to lack of work."

On June 8, 1978, the District informed the Department by letter that appellant and six other named teacher's aides would be "returning" to work for the District on August 28, 1978. It was also stated in the letter that "[d]ue to their place on the seniority list, and the fact that funding has been approved for their positions, they will be notified to return to work on August 28, 1978."[3]

On July 13, 1978, the Department sent appellant a "Notice of Determination" informing her that she was "not eligible to receive benefits" as claimed. The reasons for this determination were stated in the notice as follows: "You are customarily employed by Round Valley School [*sic*] District. Although you are presently performing no services, you have *reasonable assurance* of returning to your position as a school employee at the close of the current [summer] recess period. Under these circumstances, payment of benefits based on school wages is prohibited by Section 1253.3 for any week falling wholly or partially within the school recess period." (Italics added.)

Appellant took an administrative appeal to a referee of the Department pursuant to section 1328. After conducting an evidentiary hearing at which the above-summarized facts were shown, the referee filed a decision reversing the Department's determination and holding that appellant was "not ineligible to receive unemployment benefits under . . . Section 1253.3." The Department appealed the referee's decision to respondent Appeals Board. (See § 1336.) Appellant and the department

---

dressed to the unemployment compensation law as such. (See stats. 1972, ch. 429, § 1, p. 762; Comment, *Review of Selected 1972 California Legislation* (1973) 4 Pacific L.J. 211, 456-457.)

[3]The District wrote the letter to the Department pursuant to the second sentence of section 1327, which provided at pertinent times as follows: "The Department . . . shall give a notice of the filing of a new or additional claim [for unemployment compensation benefits] to the employing unit by which the claimant was last employed immediately preceding the filing of such claim. The employing unit so notified shall submit within 10 days after the mailing of such notice any facts then known which may affect the claimant's eligibility for benefits."

filed briefs on this appeal pursuant to a letter of authorization written by the Appeals Board on November 30, 1978.

The Department's appeal was concluded in a written decision filed by a three-member panel of the Appeals Board. (See § 409.) The panel reversed the referee's decision and held that appellant had been "ineligible for benefits under section 1253.3 ... beginning June 4, 1978," on the ground that the memorandum written by the District in May of 1978 (see the text at fn. 2, *ante*) had "afforded the claimant [appellant] a reasonable assurance of employment" in the 1978-1979 academic year.

### *The Present Proceeding*

Appellant commenced this proceeding by filing a "Petition For Writ Of Mandate And Complaint For Declaratory Relief (C. C. P. §§ 1060; 1094.5)" in the superior court. Respondent Appeals Board was named in the petition as "Respondent and Defendant." Appellant subsequently amended it to name the District as "Real Party In Interest."

Appellant alleged the substance of the above-summarized facts and proceedings in a count entitled "First Cause Of Action (Administrative Mandate)." On the basis of this count, she prayed that "pursuant to Code of Civil Procedure section 1094.5" the court "issue its peremptory writ of mandate commanding respondent [Appeals Board] to set aside its decision ... and to take further action consistent with ... [the court's] ... opinion and judgment." On the basis of another count entitled "Second Cause Of Action (Declaratory Relief)," she prayed for a declaratory judgment to the effect that classified employees of a public school district "are not rendered ineligible" for unemployment compensation benefits pursuant to section 1253.3, subdivision (c), if they are laid off by a "notice issued pursuant to Education Code section 45117." (See fn. 2, *ante*.)

The Appeals Board and the District filed answers in the action, which was orally argued at a hearing set on appellant's motion. The full administrative record was received in evidence at the hearing, and the cause was submitted for decision on that record only. The trial court filed a memorandum decision in which it reviewed the record and stated that "the petition for writ of mandate and for declaratory judgment is denied." Appellant requested written findings of fact and conclusions of law, which were eventually settled in favor of respondent Appeals Board

and filed. The court thereupon entered a judgment denying the relief prayed in the petition. This appeal followed.

*Review*

It has been undisputed throughout the successive proceedings that section 1253.3, subdivision (c), operated to make appellant ineligible for unemployment compensation benefits in the summer of 1978 if there were at that time "a reasonable assurance" that she would be re-employed by the District in the same position, or in one involving her performance of the same "service," when the schools reopened at the commencement of the next academic year in the fall. (See fn. 1, *ante.*) She invoked the provisions of Code of Civil Procedure section 1094.5 in seeking judicial review of the Appeals Board's determination that she was ineligible for the claimed benefits because such "reasonable assurance" existed. The trial court was therefore required to conduct a limited trial de novo, and to exercise its independent judgment, on the evidence of the element of "reasonable assurance" shown in the administrative record. (See *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774-776 [163 Cal.Rptr. 619, 606 P.2d 707]; *Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561]; see also *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-147 [93 Cal.Rptr. 234, 481 P.2d 242].)

Proceeding as required, the court (1) made a finding that such "reasonable assurance" existed at pertinent times as a matter of ultimate fact; (2) stated in a conclusion of law that it existed "within the meaning" of section 1253.3;[4] and (3) denied relief in administrative mandamus accordingly. ■ Appellant challenges both the finding and conclusion, contending in effect that the only evidence pertinent to the issue of "reasonable assurance" was the message communicated to

---

[4]We refer here to the court's finding No. 1 and conclusion of law No. 1, which read in their respective contexts as follows:

"Findings Of Fact
"1. When, in June 1978, petitioner [appellant] completed her sixth year as a 'teacher's aide' for the ... District, *there was* in fact *a reasonable* expectation, *assurance* and likelihood that she would be rehired in the same or an equivalent position when school restarted in the fall. . . .

"Conclusions Of Law
"1. When, in June 1978, petitioner completed her sixth year as a 'teacher's aide' for ... [the] ... District, there was a 'reasonable assurance' within the meaning of ... section 1253.3 that she would be rehired in the fall. . . ." (Italics added.)

her in the memorandum written by the District to teacher's aides in May of 1978 (quoted in the text at fn. 2, *ante*) and that the message did not establish the requisite "reasonable assurance" because it did not show an "agreement" for her reemployment within the meaning of the federal law which underlies section 1253.3. She also contends that the message was an "offer" of reemployment which was by its terms contingent upon the availability of funds to finance her position in the 1978-1979 school year; and that it consequently did not establish "reasonable assurance" within the meaning of section 1253.3, subdivision (c), because the definition of that term in subdivision (f) of the statute expressly excludes an "offer of employment" which is "contingent on ... funding ...." (See fn. 1.)

The federal law underlying section 1253.3 is identified in it. Subdivision (f) of the statute defines the term "'reasonable assurance'" for "purposes" of the section and "to the extent permitted by federal law." Subdivision (a) of the statute refers to specific "federal law" by establishing eligibility for unemployment compensation benefits derived from "service" (i.e., employment) "to which Section 3309(a)(1) of the Internal Revenue Code of 1954 applies ...." This reference is to section 3309(a)(1) of the Federal Unemployment Tax Act. (26 U.S.C.A. §§ 3301-3311.)

The latter enactment (hereinafter the federal Act, or Act) imposes an annual federal tax on an affected "employer" in specified percentages of the "total wages" paid in a given calendar year. (26 U.S.C.A. § 3301.) It also allows a partial credit against the tax for "contributions" paid by the employer pursuant to a state unemployment compensation program which is approved by the Secretary of Labor upon review for conformity with qualifying criteria established in the federal Act. (26 U.S.C.A. §§ 3302(a)(1), 3304(a).) State programs thus approved by the Secretary of Labor are subsidized with federal grants paid to the conforming states pursuant to the Social Security Act. (42 U.S.C.A. §§ 501-503.) The California Legislature has qualified the employers of this state for the tax credits, and its program for the subsidies, by adopting and maintaining an unemployment compensation law which closely conforms to the criteria established in the federal Act. (See § 101; see also, e.g., *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121, 125 [28 L.Ed.2d 666, 670, 915 S.Ct. 1347]; *Gillum* v. *Johnson* (1936) 7 Cal.2d 744, 749-755 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595]; 60 Cal.Jur.3d, Unemployment Compensation, § 1, pp. 567-568.)

The federal Act was substantially amended by Public Law No. 94-566, which was enacted by the Congress in 1976. (90 Stat. 2667 (Oct. 20, 1976).) Public Law No. 94-566 amended section 3309(a)(1) of the Act to extend eligibility for unemployment compensation benefits to certain employees of state and local governments within the several states. (*County of Los Angeles, Cal.* v. *Marshall* (D.C.Cir. 1980) 631 F.2d 767, 768, cert. den. 449 U.S. 837 [66 L.Ed.2d 44, 101 S.Ct. 113].) It also amended section 3304(a) of the Act to include the corresponding provisions of state law to be exacted of conforming states upon review by the Secretary of Labor. Subsection (6)(A) of section 3304(a) was thus amended to provide in effect that public school employees might be eligible for benefits "except" in certain instances involving their unemployment during periods of summer recess at the employing schools. Subparagraph (i) of the amended subsection requires in effect that a conforming state *must* deny eligibility for summertime benefits to a professional school employee (such as a teacher), at any grade level, if there is "a contract" providing for his or her reemployment in the fall or "reasonable assurance" of such reemployment. Subparagraph (ii) of the amended subsection provides in effect that a conforming state *may* deny eligibility for summertime benefits to a nonprofessional school employee at a subcollegiate grade level (such as appellant) if there is "reasonable assurance" (only) of his or her reemployment in the fall.[5]

---

[5]Public Law No. 94-566 amended section 3304(a) of the federal Act to provide in pertinent part as follows:

"3304. (a) The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

" . . .

"(6)(A) compensation is payable on the basis of service to which section 3309(a)(1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; except that—

"(i) with respect to services in an instructional, research, or principal administrative capacity for an educational institution to which section 3309(a)(1) applies, compensation *shall not be payable* based on such services for any week commencing during the period between two successive academic years . . . to any individual if such individual performs such services in the first of such academic years . . . and if *there is a contract or reasonable assurance* that such individual will perform services in any such capacity for any educational institution in the second of such academic years . . ., [and]

"(ii) with respect to services in any other capacity for an educational institution (other than an institution of higher education) to which section 3309(a)(1) applies, compensation payable on the basis of such services *may be denied* to any individual for any week which commences during a period between two successive academic years . . . if such individual performs such services in the first of such academic years . . . and *there is a reasonable assurance* that such individual will perform such services in the second of such academic years . . . ." (Italics added.)

The language in subparagraph (ii) limiting its reach to "services" performed "for an educational institution (other than an institution of higher education)" is explained by

In the 1978 enactment which amended section 1253.3 as pertinent to the present case (see fn. 1, *ante*), the California Legislature expressly declared that it was "necessary to implement Public Law 94-566" (Stats. 1978, ch. 2, § 106, p. 51); i.e., that it was "necessary" to keep the unemployment compensation program of this state in conformity with the federal Act as amended in 1976. Consistent with this purpose, the Legislature amended subdivisions (a) and (b) of the statute to incorporate the successively mandatory provisions of the first paragraph of subparagraph (i) of subsection (6)(A) of section 3304(a) of the amended federal Act; amended subdivision (c) of the statute to incorporate an optional provision authorized by subparagraph (ii) of the subsection; and enacted a conforming definition of the term "'institution of higher education'" by adding subdivision (e) to the statute. (See the amended statute as quoted in fn. 1, *ante*; compare the corresponding provisions of the amended federal Act as quoted in fn. 4.)

The present controversy concerning the term "reasonable assurance" develops because the term is used in subparagraphs (i) and (ii) of subsection 6(A) of section 3304(a) as amended (see fn. 4, *ante*), but it is not defined there or elsewhere in the amended federal Act. Appellant's contention that "reasonable assurance" of reemployment requires an "agreement" for it is based on language used by a conference committee of the Congress in a report which was adopted when Public Law No. 94-566 was enacted in 1976.[6]

---

subdivision (f) of section 3304, which was added to it by Public Law No. 94-566. Subdivision (f) provides in pertinent part as follows:

"(f) For purposes of subsection (a)(6), the term 'institution of higher education' means an educational institution in any State which—

"(1) admits as regular students only individuals having a certificate of graduation from a high school ...;

"(2) is legally authorized within such State to provide a program of education beyond high school;

"(3) provides an educational program for which it awards a bachelor's or higher degree, or provides a program which is acceptable for full credit toward such a degree, or offers a program of training to prepare students for gainful employment in a recognized occupation; and

"(4) is a public or other nonprofit institution."

[6]We quote this statement at some length because it confirms our construction of Public Law No. 94-566, and of the conforming amendments of section 1253.3, before it addresses the term "reasonable assurance." The report reads in pertinent part as follows (italics and interpolations added):

"... The conference agreement provides that unemployment compensation based on services performed for an educational institution shall be denied to a teacher or other professional employee during periods between academic years or terms if there is a con-tract or *reasonable assurance* that the individual will perform such services in the forthcoming academic year or term. [See § 1253.3, subd. (b).] States are permitted to

In the first place, interpretation of the phrase "reasonable assurance" does not require resort to the conference committee report because it is an unambiguous, plain-language term which conveys a readily understandable message as it is used in the amended federal Act itself. The term is therefore to be construed as it reads, and without resort to extrinsic legislative sources in aid of its interpretation. (*Morse v. Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]; *People v. Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675]; *People v. Wright* (1975) 47 Cal.App.3d 490, 494 [120 Cal.Rptr. 899]; *Hernandez v. Imperial Irr. Dist.* (1967) 248 Cal.App. 2d 625, 626-627 [56 Cal.Rptr. 811].)

Alternatively, we would find nothing of significant assistance to appellant if we were required to look to the conference committee's definition of "reasonable assurance" of reemployment as an "agreement" for it. The committee also reported in effect that the word "contract" was "intended to include tenure status" as it was used in the language amending subparagraph (i) of subsection (6)(A) of section 3304(a) of the federal Act (see fn. 5, *ante*) with reference to "a teacher or other professional employee" of a school. (See fn. 6.) This statement indicated the view that the provisions of the amended subparagraph would require a conforming state to deny eligibility for unemployment compensation benefits to a professional school employee, for any period of layoff during a summer recess, (1) where the employee had "tenure" which gave him or her an enforceable right to reemployment in the fall, pursuant to state law conventionally defining "tenure" and its incidents, *or* (2) where the reemployment was not guaranteed by "tenure" but there was "reasonable assurance" of it.

Construed in that light for purposes of subparagraph (i) of the subsection as amended, the committee's definition of "reasonable assurance" imported an "agreement" for the reemployment of the profession-

---

deny benefits based on services performed for educational institutions to *nonprofessional school employees* during periods between academic years or terms *if there is reasonable assurance* that the individual will be employed by the educational institution in the forthcoming year or term. [Compare § 1253.3, subd. (c).]

"...

"For purposes of this provision, the term 'reasonable assurance' means a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term. A contract is intended to include tenure status." (Unemployment Compensation Amendments of 1976 (Pub.L. No. 94-566); see Joint Explanatory Statement of the Committee of Conference, 1976 U.S. Code Cong. & Admin. News at pp. 6033, 6036.)

al employee, in the fall, but without the enforceable right to it which he or she would have if it were guaranteed by "tenure." Stated another way, the committee defined "reasonable assurance" of reemployment as an "agreement" which contemplated the reemployment of the affected school employee but which he or she could not enforce. If it be assumed that the committee's definition must be read into the federal Act as amended, the term "reasonable assurance" appearing in subparagraph (i) of subsection (6)(A) of section 3304(a) of the amended Act, with reference to the prospect that teachers and other professional school employees will be reemployed in the fall following a summer recess, means an "agreement" for reemployment which he or she cannot enforce. The context of the subsection requires a similar interpretation of the term as it is used in subparagraph (ii), which reaches nonprofessional school employees such as appellant.

The more immediate question involves the meaning of the term as it is used in section 1253.3, subdivision (c), as amended in 1978. The Legislature defined it there by providing in subdivision (f) of the amended statute that "[f]or purposes of this section, to the extent permitted by federal law, 'reasonable assurance' includes, but is not limited to, an offer of employment made by the educational institution, provided, that such offer is not contingent on enrollment, funding, or program changes." (See fn. 1, *ante.*) This definition is open-ended ("includes"), nonexclusive ("is not limited to"), and deferential to "federal law," which means that it equates "reasonable assurance" with "agreement" if the amended federal Act (the enabling "federal law") does. We have seen that the amended federal Act does not have that effect because it imparts no special meaning to the term "reasonable assurance" other than the meaning we may discern from its plain language. If the contrary is true (i.e., if the definition stated in the 1976 report of the 1976 congressional conference committee applies), we have seen that in the context of the amended Act the term means an "agreement" which contemplates the reemployment of an affected school employee but which he or she cannot enforce. The definition of the term in section 1253.3, subdivision (f), is limited to a noncontingent "offer of employment," which does not amount to an enforceable "agreement" for employment. The definition is accordingly "permitted by federal law" within the meaning of subdivision (f).

Having worked out the pertinent nomenclature, we turn to the trial court's findings of fact and conclusions of law. Attempting to establish that the memorandum written by the District in May of 1978 (see the

text at fn. 2, *ante*) did not constitute "reasonable assurance" of her reemployment within the meaning of section 1253.3, subdivisions (c) and (f), appellant asked the trial court to make a finding that the memorandum "was, in part, an offer of reemployment in the fall that was contingent on funding." The court did not reject this request by making a finding that the memorandum was *not* a contingent offer, but it expressly determined in finding No. 1 that there was "reasonable assurance" of appellant's reemployment after the memorandum was written. (See fn. 4.) Read in light of section 1253.3, subdivision (f), the express finding necessarily includes a determination of the ultimate fact that the memorandum was not a contingent offer of reemployment. We are not impermissibly inferring a finding which was requested on a material issue but not made (see Code Civ. Proc., § 634); we are perceiving that it was made, in the negative, by an express finding which refutes the fact claimed. Having covered the subject matter of the finding requested, the court did not fail to find on a material issue.

The memorandum written in May of 1978 informed appellant that the District "expect[ed] to rehire" her in the fall, and that it would pay her insurance premiums during the intervening summer months. (See the text at fn. 2, *ante.*) It qualified the expectations it expressed by mentioning the contingency of funding. It was nevertheless not framed in terms of an "offer" of reemployment, subject to the contingency or otherwise, and nothing in the record supports an inference that appellant could have established an enforceable contractual right to reemployment by treating the memorandum as an "offer" and purporting to accept it. The essential message it communicated was a statement of the District's expectations that she would be reemployed in the fall. It was nothing more but nothing less, and she received the message against an uninterrupted background of several years in which she had been terminated each spring and reemployed each fall when funds for her position materialized.

These factors add up to substantial evidence in support of the trial court's finding (No. 1) that there was a "reasonable assurance" of appellant's reemployment (short of an "offer," but both "reasonable" and "assurance") at the time she applied for unemployment compensation benefits. The finding is therefore to be sustained on the appeal. (See *Bixby v. Pierno, supra*, 4 Cal.3d 130 at p. 143, fn. 10.)

We have seen that the "federal law" underlying section 1253.3 may be interpreted to define "reasonable assurance" of reemployment as an

unenforceable "agreement" contemplating it, and that this interpretation may apply to the definition of "reasonable assurance" provided in section 1253.3 as amended. If so, the understanding generated by the District's memorandum met the definition because it was an "agreement" which contemplated appellant's reemployment but which she could not enforce. The memorandum consequently established "reasonable assurance" within any pertinent interpretation of that term as it is used in section 1253.3. This means that the trial court correctly determined in its conclusion of law No. 1 that when appellant stopped working at the end of the 1977-1978 school year "there was a 'reasonable assurance' within the meaning of ... section 1253.3 that she would be rehired in the fall." (See fn. 4, *ante.*) The conclusion having been correct, it is also to be sustained on the appeal. Finding No. 1 and conclusion of law No. 1 support the judgment denying relief in administrative mandamus.

Appellant also cites two irregularities alleged to have occurred in the administrative proceedings conducted on her application for benefits and before the Appeals Board. She in effect concedes that she was not prejudiced in either instance. For that reason, neither irregularity would warrant reversal of the judgment denying relief in administrative mandamus. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 834-836 [299 P.2d 243]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 318, pp. 4297-4298.)

The trial court stated in a conclusion of law that its "decision with respect to the petition for writ of mandate resolves the only real conflict between the parties and, accordingly, there is no need to issue a declaratory judgment." This conclusion is supported by the record. The aspect of the judgment denying declaratory relief need not be discussed further.

The judgment is affirmed.

Poché, J., and Anderson, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 3, 1982.

---

*Assigned by the Chairperson of the Judicial Council.