[No. B001803. Second Dist., Div. One. Oct. 2, 1984.]

BOARD OF EDUCATION OF THE LONG BEACH
UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Respondents, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Appellants;
STEVEN N. SMITH, Real Party in Interest and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Thomas A. Warriner, Assistant Attorney General, and Anne S. Pressman, Deputy Attorney General, for Defendants and Appellants.

De Witt W. Clinton, County Counsel, and Louis S. Gordon, Deputy County Counsel, for Plaintiffs and Respondents.

No appearance for Real Party in Interest and Respondent.

OPINION

HANSON (Thaxton), J.—California Unemployment Insurance Appeals Board (Board) which had issued a "Precedent Benefit Decision" holding that a substitute teacher in the Long Beach Unified School District (District) was entitled to unemployment benefits during summer recess pursuant to the provisions of section 1253.3 of the Unemployment Insurance Code,[1] appeals from the superior court judgment granting a petition for writ of mandate filed by the District and setting aside the Board's decision. We affirm.

FACTS

During the 1979-1980 school year, real party in interest, Steven N. Smith, was employed by the District as a substitute teacher. During that school year he taught on an average of 13 school days out of approximately 20 school days per month. He last worked on June 11, 1980.

On or about June 16, 1980, Mr. Smith received a form-type letter (dated June 16, 1980) from the assistant superintendent, personnel services divi-

_____

[1]Unless otherwise indicated, all code references are to California's Unemployment Insurance Code.

sion, addressed to "Substitute Teachers" who had served the District during the 1979-1980 academic year. This form letter to the "Substitute Teachers" thanked each "for the fine service you have rendered and to again offer [the substitute teacher] the opportunity to serve during the coming year." The form letter further stated: "We sincerely hope you are able to accept this offer of continuing employment as a substitute teacher for the 1980-81 academic year." This form letter also contained a detachable return form for the substitute teacher to fill out and return to the school district, signifying whether the teacher would or would not be available for substitute teaching during 1980-1981.

On July 2, 1980, Mr. Smith filled out and returned the detachable portion of the June 16 form letter indicating that he would be available for substitute teaching during 1980-1981 in the secondary schools (junior high and high schools) of the District. Immediately above his signature he inscribed the following legend: "For legal purposes: I do not accept this letter as reasonable assurance of employment, but rather 'the opportunity of such.'"

On August 8, 1980, Mr. Smith received another form-type notice from the District's personnel services division addressed "To: Substitute Teachers" which advised each recipient, including Mr. Smith, of his election by the Board to serve as a substitute teacher for the school year 1980-1981, and indicated the applicable rates of substitute teacher pay. This notice contained the following paragraph: "*Substitute teachers are given no assurance of employment.* However, calls are rotated as equitably as possible in the best interest of the school district. Because the work of substitute employees is only from day to day, their services are used as needed. The success of the substitute in the situation to which he/she has been assigned is an important criterion in determining the frequency of calls." (Italics added.)

## PROCEDURAL HISTORY

On June 15, 1980, Mr. Smith applied for unemployment benefits for the summer recess of 1980. The Employment Development Department (Department) denied Mr. Smith's claim for unemployment benefits, having determined that he was ineligible for summer benefits under the provisions of section 1253.3 since he was "reasonably assured" of returning to work following the recess period.

On or about July 10, 1980, Mr. Smith filed a notice of appeal from the Department's determination.

On September 12, 1980, following the administrative hearing by Francis G. Knipe, the administrative law judge (ALJ), the Department's denial of benefits was affirmed and a written decision filed.[2]

Mr. Smith appealed the ALJ's ruling to the Board.

On January 20, 1981, the Board reversed the decision of the ALJ and issued its "Precedent Benefit Decision No. P-B-419" determining that unemployment benefits were payable to Mr. Smith during the summer recess period in question pursuant to section 1253.3 since he did not have a "reasonable assurance" of returning to work following the summer recess period.

The District thereafter filed a petition for writ of mandate and for declaratory relief in the superior court seeking to set aside the Board's "Precedent Benefit Decision" and to restrain the respondent Board from applying that decision to all future similar claims for unemployment insurance benefits by substitute teachers similarly employed. (The District expressly disclaimed any reimbursement or repayment of unemployment benefits paid to Mr. Smith.)

The superior court (Honorable Elsworth M. Beam, judge presiding) having considered the record of the administrative proceedings, the verified petition with exhibits, the answer thereto, all points and authorities, and following oral argument, granted the District's petition for writ of mandate. The trial court declared the Board's decision invalid and directed it to modify its "Precedent Benefit Decision" to conform to the judgment of the superior court in accordance with section 409.1.[3] The Board appeals.

---

[2]The ALJ, in affirming the determination of the Department and denying unemployment benefits to Mr. Smith, traced the chronological legislative history of the unemployment insurance program on the federal level, concluding that Congress, by use of the words "reasonable assurance of returning to work," intended to broaden the category of individuals beyond contract teachers who were to be denied benefits. The ALJ's opinion points out that Congress considered and did mean to include substitute teachers since the original version of the Emergency Unemployment Compensation Act of 1977 (Pub.L. No. 95-19) had a provision, in its Senate version, which dealt with substitute teachers but that Congress did not provide relief to substitute teachers from the "reasonable assurance" provision in the code. Section 1253.3 was added to California's Unemployment Insurance Code in order to comply with the requirements of federal law (Pub.L. No. 94-566).

[3]Section 409.1 provides: "If a final judgment of a court of competent jurisdiction reverses or declares invalid a precedent decision of the appeals board issued under Section 409 or this section, the appeals board, acting as a whole, shall promptly modify the precedent decision to conform in all respects to the judgment of the court. The modified precedent decision shall supersede the prior precedent decision for all purposes. The appeals board shall promptly notify the director, the referees of the appeals board, and all other subscribers to the precedent decisions, of the modified precedent decision."

## ISSUE

 The determinative issue is whether or not substitute teacher Smith had a "reasonable assurance" for employment by the District as a substitute teacher for the academic year 1980-1981 within the meaning of section 1253.3.

If Mr. Smith had such "reasonable assurance," he was not entitled to unemployment benefits during the summer recess in question. Conversely, if he did not have such "reasonable assurance" of postrecess employment by the District, he was entitled to unemployment benefits during the summer recess period in question.

## DISCUSSION

At the time the Board issued its "Precedent Benefit Decision," section 1253.3, in pertinent part, provided: "(a) Notwithstanding any other provision of this division, unemployment compensation benefits . . . are payable on the basis of service to which Section 3309 (a)(1) of the Internal Revenue Code of 1954 applies, in the same amount, on the same terms, and subject to the same conditions as such benefits payable on the basis of other service subject to this division, except as provided by this section. [¶] (b) Benefits specified by subdivision (a) of this section based on service performed in the employ of a nonprofit organization, or of any public entity as defined by Section 605, with respect to service in an instructional, research, or principal administrative capacity for an educational institution shall not be payable to any individual with respect to any week which begins during the period between two successive academic years or terms or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period, or during a period of paid sabbatical leave provided for in the individual's contract, if the individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms. [¶] . . . [¶] (f) For purposes of this section, to the extent permitted by federal law, 'reasonable assurance' includes, but is not limited to, an offer of employment made by the educational institution, provided, that such offer is not contingent on enrollment, funding, or program changes."

The appellant Board argues that substitute teacher Smith did not have a "reasonable assurance" to postrecess employment. In its "Precedent Benefit Decision" the Board based its determination on the sentence in the

District's form letter of August 8, 1980, which stated that substitute teachers are given no assurance of employment; that there was no offer of future work, no contract for continuing services, and no commitment by the District to provide such work in the fall. The Board's decision places great emphasis upon the tenuous nature of a substitute teacher's employment, including the impermanence, insecurity, and indefiniteness inherent in such employment.

The respondent District asserts 1) that the Board abused its discretion by adopting its "Precedent Benefit Decision No. P-B-419" which established a "precedent," with statewide impact, in respect to unemployment benefits for substitute teachers during summer recess in contravention of the statutory scheme of federal legislation as reflected in section 1253.3, placing in jeopardy the continued validity of California's unemployment compensation plan; and 2) that the superior court's judgment was supported by substantial evidence and should not be disturbed on appeal.

When the Board issued its "Precedent Benefit Decision No. P-B-419" on January 20, 1981, it did not have the benefit of *Russ* v. *Unemployment Ins. Appeals Bd.* (1981) 125 Cal.App.3d 834 [178 Cal.Rptr. 421] (filed Nov. 19, 1981; hg. den. Feb. 3, 1982).

In *Russ,* the trial court denied the petition of a teacher's aide at an elementary school for a writ of administrative mandate and for declaratory relief by which she challenged a decision of the Unemployment Insurance Appeals Board denying her benefits claimed for a period in which she was out of work during summer recess. The Board had found the employee was ineligible in that when she was notified that her employment was terminated, she was given "reasonable assurance," within the meaning of Unemployment Insurance Code, section 1253.3, subdivision (c), and underlying federal law (26 U.S.C. § 3304(a)(6)(A)(ii)), that she would be reemployed in the fall. The notice to the employee stated there would be no work until funds for the next school year were approved, that the school district expected to rehire her in the fall, and that her insurance premiums would be paid by the district through the summer. For several previous years, the employee had been terminated each spring and reemployed each fall when funds for her position materialized.

The *Russ* court in affirming the trial court held that the term "reasonable assurance," though not defined in the federal act, is an unambiguous, plain-language term which conveys a readily understandable message as it is used in the act, and that it is therefore to be construed as it reads, and without resort to extrinsic legislative sources in aid of its interpretation. However,

the appellate court concluded that the legislative history of the federal act indicates the term means an agreement contemplating reemployment which the affected employee cannot enforce. The *Russ* court rejected the employee's contention that the notice given her by the district was an "offer" of reemployment contingent on the availability of funds to finance her position in the next school year, and that it consequently did not establish "reasonable assurance" within the meaning of Unemployment Insurance Code section 1253.3, subdivision (c), since the definition of that term in subdivision (f) of the statute expressly excludes from the term "reasonable assurance" an "offer of employment" which is "contingent on . . . funding." The court held that the notice to the employee was not an "offer" of employment within the meaning of the exclusion, but was an unenforceable agreement contemplating reemployment, and that its mention of "funds" therefore did not preclude the trial court from finding, as it did, that the notice constituted a reasonable assurance of reemployment.

In the case at bench, we hold that the unambiguous language of section 1253.3 and substantial evidence supports the trial court's findings and judgment.

Here, the superior court properly exercised its independent judgment in reviewing the Board's precedent benefit decision. (See *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566].)

■ On review by this court, the trial court's judgment must be upheld if there is any substantial evidence in support of the court's findings and all contrary evidence should be disregarded. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].)

■ The superior court concluded that the Board's reliance on the tenuous impermanent nature of substitute teacher Smith's employment, e.g., that he "acquired no vested or protected right to continuous employment" and that he "was not subject to termination since his job ended at the conclusion of each school day," are irrelevant to the "reasonable assurance" issue within the meaning of section 1253.3. We agree.

Consideration of such tenuous aspects are extrinsic to clear legislative language and sources and therefore cannot be a basis for resolving the "reasonable assurance" issue. (See *Russ* v. *Unemployment Ins. Appeals Bd.*, *supra*, 125 Cal.App.3d 834.)

■ The exclusion of benefits under section 1253.3 applies to instructional educational employees regardless of whether their employment status

is vested or nonvested. If there is a contract or a reasonable assurance that a teacher, who has taught for the District during the prerecess period, will perform teaching services for the employer in the academic year or term during the postrecess period, then the teacher must be denied unemployment benefits during summer recess regardless of whether he or she is a tenured or nontenured teacher or whether his or her employment is vested or non-vested.

There is nothing in section 1253.3 which sets as a criteria the tenuous nature of a substitute teacher's position as a basis for determining the "reasonable assurance" issue. Under section 1253.3, subdivision (f), a "reasonable assurance" includes at least an "offer of employment" provided that such employment is not contingent on "enrollment, funding or program changes."

Under Education Code section 44917, the sole function of a substitute teacher is to fill the position of a regularly employed person who is absent from service. Thus, the call for Mr. Smith's services on any given day during the prerecess 1979-1980 academic year, as well as during the postrecess 1980-1981 academic year, was contingent upon the needs of the District to fill the position of absent regular teachers. Such a contingency is not included in section 1253.3, subdivision (f). The only contingencies specifically spelled out which would operate to nullify the "offer of employment" aspect as a basis for "reasonable assurance" are "enrollment, funding or program changes." There is no evidence that such contingencies impact on the postrecess employment of Mr. Smith as a substitute teacher.

The June 16, 1980, form letter from the District stated: "We sincerely hope you are able to accept this offer of continuing employment as a substitute teacher for the 1980-81 academic year." ■ Since the District's offer of postrecess employment was not contingent upon "enrollment, funding or program changes," it meets the statutory definition of "reasonable assurance" set forth in subdivision (f) of section 1253.3.

Mr. Smith's personal note, added to his acceptance of the District's offer of postrecess employment by returning the detachable portion of the June 16, 1980, form letter in which he signified that he did not regard the offer as a "reasonable assurance," is also immaterial. ■ It is axiomatic that a substitute teacher by merely adding such disclaimer to his acceptance of an offer of continued employment as a substitute teacher for the next academic year cannot unilaterally render himself or herself *eligible* for unemployment benefits during summer recesses and thus circumvent or nullify the unambiguous controlling statutory language of section 1253.3. Thus,

Mr. Smith accepted the offer of postrecess employment when he stated: "I would like to be a substitute teacher for the following academic year." The District's notice of August 8, 1980, stated: "This is to notify you that you were elected as a substitute teacher by the Board of Education for the school year 1980-81."

 The foregoing exchange of the printed notices and forms, coupled with the evidence that Mr. Smith's past employment record (he had been called as a substitute teacher on an average of 13 out of about 20 school days per month during the preceding school year) and no evidence that his situation would change in the postrecess period, along with the overall practice and experience factors of employing substitute teachers, and the conspicuous absence of any evidence that such postrecess offer of employment was contingent on "enrollment, funding or program changes," constituted substantial evidence to support the superior court's finding that Mr. Smith had a "reasonable assurance" of postrecess employment for the District in the capacity as a substitute teacher, and thus *ineligible* for summer recess unemployment benefits within the meaning of section 1253.3.

Additionally, the fact that the District must resort to advertising in order to fill its need for substitute teachers compels the inescapable conclusion that there is a demand for substitute teachers in the school district. This demand, along with evidence of Mr. Smith's previous assignments, indicates that his continued employment was reasonably assured.

 Nor does the sentence in the District's form letter sent to Mr. Smith (and all substitute teachers) on August 8, 1980, which states "Substitute teachers are given no assurance of employment," literally construed, automatically operate to circumvent or nullify the unambiguous statutory language of section 1253.3. This sentence, reasonably construed in light of the whole record, merely advises the recipient of the "realities of the situation" applicable to substitute teaching employment. It merely cautions that for a substitute teacher there can be no *absolute guarantee* of work.[4]

---

[4]The record on appeal contains a copy of a memorandum from the Administrator, Unemployment Insurance Service, United States Department of Labor, Washington, D.C. to the Regional Administrator, San Francisco, dated October 3, 1979, concerning the subject of "Between-Terms Denial for Substitute Teachers."

This memorandum addressed inquiries from organizations in several states concerning the meaning of "a reasonable assurance" for a prospective substitute teacher. The memorandum contained the following: "The heart of the problem of 'a reasonable assurance' for substitute teachers is the nature of the work. The amount of work available cannot be determined. It is dependent on the number cf regular teachers who will be absent during the school year. This is not susceptible to precise prediction. While the educational employer may have a general idea of the number of 'substitute days' needed on the basis of past experience, the

Such a *guarantee* of postrecess employment is not required in order to resolve eligibility or noneligibility for unemployment benefits during summer recess periods.

In 1976 when Congress and our state Legislature amended section 1253.3 to comply with federal law, the words "reasonable assurance" were added in respect to reemployment in the postrecess term. It was clearly added as an alternative to a "contract" for such postrecess reemployment. Obviously, it was not the legislative intent to require an absolute guarantee, or the words "reasonable assurance" would have no meaning.

The practical effect of the Board's decision is to assure that most, if not all, substitute teachers in California will be eligible for unemployment benefits during the annual summer recess periods while probationary and permanent teachers who are by statute or by contract guaranteed employment for the postrecess academic term are ineligible for such benefits. Thus, the Board's precedent benefit decision constituted a violation of the principle of "like pay for like services" as enunciated in cases like *Fry* v. *Board of Education* (1941) 17 Cal.2d 753 [112 Cal.Rptr. 229]; *Kacsur* v. *Board of Trustees* (1941) 18 Cal.2d 586 [116 P.2d 593]; and *Aebli* v. *Board of Education* (1944) 62 Cal.App.2d 706 [145 P.2d 601].

Respondent District's additional argument that the Board's "Precedent Benefit Decision" poses a threat to the continued validity of the California unemployment insurance plan is relevant and persuasive. In *Russ* v. *Unemployment Ins. Appeals Bd.*, *supra*, 125 Cal.App.3d, at pages 842-843, the court explained the interrelationship between the Federal Unemployment Act and the State Unemployment Insurance Program. The court pointed out that when the state program is approved by the Secretary of Labor as being in conformity with qualifying criteria established by the federal act, not only do employers in our state receive a partial credit against the federal tax for "contributions" paid by the employer to the state unemployment compensation program, but the state program is also subsidized with federal grants which are paid to conforming states pursuant to the federal Social Security Act.[5]

---

exact number of days and substitutes needed cannot be forecast. Accordingly, it would be relatively impossible for the educational employer to guarantee, in effect, if and when work would be available for a particular substitute. In our view when an individual applies for and is accepted for work as a substitute teacher, the application and acceptance is made with the full knowledge of the realities of the situation: namely that there is no guarantee of work. There is only the opportunity to work if work is available."

[5]By way of analogy, respondent District points to the most recent effort of the California Legislature to comply with the federal law. While this legislation affects only the nonprofessional employees of a school district or other educational institution, it was enacted as an

■ Finally, where "[t]he language [in the Unemployment Insurance Act] is practically identical with that used in similar sections of the federal legislation and in that of many states . . . the interpretation placed upon that language by federal and other courts is unusually persuasive here." (*Scripps etc. Hospital* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 669, 677 [151 P.2d 109, 155 A.L.R. 360].) Where California statutes "'. . . are, in substance, exact counterparts of the federal rules. . . the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts. [Citations.]'" (*Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 384 [137 Cal.Rptr. 332].)

The weight of decisional authority in other states, who have enacted legislation identical or substantially similar to California's section 1253.3 in order to conform to applicable federal law (see 26 U.S.C. § 3304(a)(6)(A)), is that substitute teachers without written contracts, and professional school district employees, permanent and nonpermanent, are ineligible for summer recess benefits because the legislators intended the disqualification to apply to continuing school employees.

Prior to the 1976 amendments in the federal law and California's section 1253.3 where the words "reasonable assurance" were added pertaining to reemployment during the postrecess term where only a "contract" to return to work after the recess precluded eligibility for summer vacation unemployment benefits, some courts found that an "implied contract" for a substitute teacher seeking summer vacation unemployment compensation rendered tenured and nontenured teachers ineligible for school recess unemployment benefits. (See *Ykovchick* v. *Public Schools of Minneapolis* (1977) 312 Minn. 139 [251 N.W.2d 626] [a day-to-day substitute teacher claiming benefits for the summer recess of 1974]; *Pac.* v. *Com., Unemployment Comp. Bd., etc.* (1979) 48 Pa.Cmwlth. 91 [409 A.2d 470] [13 substitutes of Neshaminy School District plus 3 substitutes of the Philadelphia School District as "test claimants" for 277 additional Philadelphia substitute teachers]; *Milkowski* v. *Illinois Dept. of Labor, etc.* (1980) 82 Ill.App.3d 220 [402 N.E.2d 646], [substitute teacher]; *Ellman* v. *Com., Unemployment Comp. Bd., etc.* (1979) 47 Pa.Cmwlth. 179 [407 A.2d 478] [substitute teacher].)

---

urgency statute necessary for the immediate preservation of the public peace, health or safety. The Legislature declared that the facts constituting such necessity were, in pertinent part, as follows: "In order to effect State compliance with the provisions of the Federal Social Security Reform Act of 1983 that deem nonprofessional school employees between terms ineligible for unemployment insurance compensation benefits, which compliance is necessary to avoid the loss to the State of California of $270 million in federal grants and the loss to California employers of $1.7 billion in federal unemployment tax credits . . . ."

In *Ykovchick, supra,* 251 N.W.2d 626, claimant was a day-to-day substitute teacher claiming benefits for summer 1974. He had been employed for several years as a substitute teacher for each of three school districts. There was no formal contract of employment. Instead, he would receive a yearly letter from each school district inquiring whether he wished to be a part of the district's "on call" list of substitute teachers. He would communicate his desire and assent to be placed on the "on call" list by submitting an application form furnished by each school district. He was on the list of available substitute teachers and performed such services for each school district during the 1973-1974 school year. In addition, he submitted his application to be included on the list for the 1974-1975 school year in each district and performed such teaching services for each district during that year. The denial of his claim for benefits during the intervening summer months was affirmed by the Minnesota Supreme Court. Regarding the issue of tenure, the court, at pages 628-629, stated as follows: "We are not considering a claim of tenure in this case, but rather the status of an individual employed as a substitute teacher in relation to the unemployment compensation statutes. Ykovchick's employment remained unchanged during the specific school years in question and thus he is precluded from receiving benefits during the summer months under the provisions of our statute."

In *Milkowski, supra,* 402 N.E.2d at page 649, the court, in denying benefits, stated: ". . . the Legislature did not intend the word 'contract' in the Act to be given a strictly formal construction. [Citations.] In light of this where the teacher has a *reasonable expectation* of employment, this satisfies the requirement of a 'contract' for purposes of the Act. [Citations.]" (Italics added.)

The *Milkowski* court, *supra,* 402 N.E.2d at page 650, in broadly construing the term "contract" to deny benefits to those teaching professionals who are only temporarily unemployed, perceived the congressional intent as follows: "As the Pennsylvania court stated in *Ortiz* v. *Commonwealth Unemployment Compensation Board of Review* (1979), 52 Pa. Cmwlth. 234, 400 A.2d 685, school employees know that they generally will not be working during prescheduled vacations and during the summer recess and we do not believe that Congress ever intended to subsidize summer vacations."

In *Rish* v. *Com., Unemp. Comp. Bd. of Review* (1980) 48 Pa.Cmwlth. 388 [409 A.2d 959], the court denied summer recess benefits to a substitute teacher on the basis of an "implied agreement" which the court found from the fact that the claimant intended to continue her employment with the school district, if work was available, and from the fact that the claimant

could reasonably expect substitute work in the future since her name appeared on the district's substitute teacher roster. Speaking to the basic purpose served by unemployment compensation statutes, the court, at page 961, stated: "The instant facts present precisely the type of subsidized summer vacation which the Unemployment Compensation Law seeks to prevent. [Citations.]"

In *Holmes* v. *State, Dep. of Employment Sec.* (La.App. 1977) 353 So.2d 737, 739, the Louisiana court, concluding that nontenured university professors as well as tenured university professors were ineligible for summer benefits (because nontenured as well as tenured professors had applied for and were expecting to return to their teaching positions in the fall term) stated: "Plainly and simply stated, teachers between academic terms or semesters are not unemployed. They are on vacation."[6]

With the 1976 amendment of federal law and adding the words "reasonable assurance" as exclusion for eligibility for unemployment benefits during summer vacation periods, reviewing courts in Pennsylvania and Colorado construed that term in relation to a claim for unemployment benefits during summer recess periods by a substitute teacher and a food service worker employed by the public schools.

In *Goralski* v. *Com., Unemploy. Comp. Bd. of Rev.* (1979) 48 Pa.Cmwlth. 39 [408 A.2d 1178], the claimant had worked as a substitute teacher for three different school districts, and the last day of work was June 13, 1978. She applied for unemployment benefits for the period from June 18, 1978 through September 9, 1978. Commenting on the term, "reasonable assurance," the court, at page 1180, stated: ". . . [W]e have held that there need not be a formal written or oral agreement to rehire and where there is objective evidence of mutual commitment between the teacher and employer to recall the former *or* where the teacher has a *reasonable expec-*

---

[6]Decisional law in some other states have denied unemployment benefits during the summer recess periods to claimant teachers on the basis of a statutory requirement that the claimant must be available for suitable work during the alleged period of unemployment in order to be eligible for compensation. In *Pac.* v. *Com., Unemployment Comp. Bd., etc., supra,* 409 A.2d 470, the state statute required that a claimant be "available for work" in order to be eligible for unemployment benefits. The court, at page 473, stated: "Where a school employee expects and desires to work with an educational employer at the conclusion of the summer break, he is unavailable for suitable work and thus ineligible for unemployment compensation benefits during this time. . . ."

Similarly, in *Louderback* v. *Com., Unemploy. Comp. Bd. of R.* (1980) 48 Pa.Cmwlth. 501 [409 A.2d 1198], where the court denied a substitute teacher's claim on the "implied agreement" rationale, the court, at page 1199, stated: "The record likewise supports the Board's finding that claimant was not realistically attached to the labor force and therefore unavailable for suitable work pursuant to Section 401(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 801(d)."

*tation* of returning to employment in the next academic term, the Board may properly deny benefits. [Citations.]" (Italics added.)

Goralski had received a letter from one of the school districts dated June 9, 1978, placing her on the substitute list and advising her that she would be utilized as a substitute teacher for the 1978-1979 school term. While she did not receive formal assurance of reemployment from the other two districts, she had "received no letter of termination and had no basis to believe that she would not be placed on their substitute lists for the 1978-79 terms as had been past practice." (*Id.,* at p. 1180.) Claimant Goralski contended that merely because her name was on the schools' substitute teacher lists for the ensuing academic term was not sufficient to constitute "reasonable assurance." The court in addressing this contention observed: "The crux of her argument is that, while placing her name on such lists makes her *eligible* for employment by the three districts, there is no guarantee of actual employment since the principal of each school has unfettered discretion as to which substitutes will be utilized in the event of teacher absences. [¶] First, Section 402.1(1) [Pennsylvania's statutory counterpart to subd. (b) of our § 1253.3] does not require a guarantee, but only a reasonable assurance of re-employment and the nature of what constitutes 'assurance' must be determined by the Board's examination of all the relevant facts. [Citations.] In Goralski's case, her past employment record and the past employment policies of the districts indicate that she has, in fact, been selected for teaching assignments from the respective lists in past years. We cannot infer that this will change in the coming term." (*Id.,* at p. 1180.)

In *Herrera* v. *Industrial Commission* (1979) 197 Colo. 23 [593 P.2d 329], the Colorado Supreme Court reviewed the claim of a *food service worker* employed by the Denver Public Schools. In 1976 she was laid off during the summer vacation and applied for and received unemployment compensation benefits. She returned to work in the fall and was again laid off during the summer of 1977. She again applied for unemployment benefits, but the federal unemployment compensation amendments of 1976 made nonprofessional school employees ineligible for benefits between school terms if there is a "reasonable assurance" that the nonprofessional will return to work following the recess. Accordingly, benefits were denied. The court decided the following: "The referee specifically found that Herrera intended to return to work and that she had not been given any notification by her employer that she would not be rehired in the fall. He concluded she had a 'reasonable assurance' that she would be called back to work in the fall. [¶] Herrera asserts she did not receive the necessary assurance. Her employer never appeared at the hearing, and the only evidence in the record of intent to rehire consisted of a signed form from Herrera's employer, stating an

intent to rehire her 'depending on continued need.' Herrera states this is insufficient. We disagree. [¶] The legislative history of the amendment in question reveals that 'reasonable assurance' was intended to mean 'a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term.' [1976] U.S. Code Cong. and Admin. News, pp. 5997, 6036. Inasmuch as Herrera was a nontenured employee, she could only expect to work for DPS [Denver Public Schools] during the fall term if the schools had 'continuing need' for her services." (*Id.*, at pp. 330-331.)

In sum, in the case at bench, we hold that substitute teacher Smith who worked in that professional relationship with the District during academic year 1979-1980; who was offered by the District continued employment during the postrecess academic year 1980-1981; who accepted such employment offer, however tenuous, and intended to continue that employment relationship with the District during the postrecess term, is ineligible for summer recess unemployment benefits during summer vacation periods having "reasonable assurance" of such postrecess employment within the meaning and intent of the disqualifying provisions of section 1253.3.[7]

### DISPOSITION

The superior court judgment is affirmed. Each party is to bear its own costs.

Spencer, P. J., and Dalsimer, J., concurred.

---

[7]We note that the substitute teacher Smith, having not resigned or retired, was not "unemployed" in the sense of being attached to the general labor force which is seeking other employment on a permanent basis.

We further note that substitute teacher Smith did in fact work for the District in that capacity during the postrecess academic year 1980-1981.

Respondent District, opting for a resolution of the "reasonable assurance" issue in respect to substitute teachers because of the statewide impact of the Board's precedent setting opinion, has waived reimbursement of the unemployment benefits paid to and received by substitute teacher Smith during the summer 1980 recess which it has characterized as a subsidized vacation at taxpayers' expense.