NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ERBEY B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.B., A.S., E.S., R.B., *Appellees.*

No. 1 CA-JV 15-0351
FILED 5-3-2016

Appeal from the Superior Court in Maricopa County
No. JD27950
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1        Erbey B. (Father) appeals the juvenile court's order terminating his parental rights to E.B., A.S., E.S., and R.B. (collectively, the Children), arguing the Department of Child Safety (DCS) failed to prove the statutory ground of abandonment by clear and convincing evidence. For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In March 2014, DCS assumed temporary custody of the Children, ages nine, eight, seven, and six, after receiving a report from the school that E.B. and E.S. were to be suspended for behavior issues, but the school had been unable to reach the Children's mother for several days. Father was in prison at the time and unable to parent.[2]

¶3        DCS filed a petition alleging the Children were dependent as to Father on the grounds of abuse and neglect. Father waived his right to contest the allegations of the petition, and, in May 2014, the juvenile court adjudicated the Children dependent as to Father.[3] Father was encouraged

---

[1]     We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]     Although paternity had not been established for the three younger children at the time the petition was filed, genetic testing, initiated by DCS, later confirmed Father is the biological parent of all four children.

[3]     The Children were also adjudicated dependent as to their mother. She did not participate in the case plan, and her parental rights were severed in January 2015. She did not appeal that order and is not a party to this action.

to participate in any services available to him while in prison that would improve his parenting skills and address concerns regarding domestic violence. In addition, he was advised to "try and build a relationship with [the Children] through cards, letters, and gifts" and approved to have supervised phone contact.

¶4 In November 2014, over Father's objection, the case plan was changed to severance and adoption. DCS immediately filed a motion to terminate the parent-child relationship, alleging severance was warranted based upon his incarceration pursuant to Arizona Revised Statutes (A.R.S.) section 8-533(B)(4).[4] DCS later amended the petition to allege abandonment pursuant to A.R.S. § 8-533(B)(1). Father was released from custody ten days prior to trial, and DCS proceeded solely upon a theory of abandonment.

¶5 At the severance hearing in October 2015, Father admitted he had been incarcerated for most of the Children's lives and had not had significant contact with the Children since he first went to prison in 2008, when the oldest of the Children was four. During the short time Father was not incarcerated in 2012, he engaged in domestic violence with the Children's mother. As a result, E.B. suffers from post-traumatic stress disorder, and R.B. expressed a desire to have no contact with Father.

¶6 In the nineteen months the Children were in an out-of-home placement, Father sent one card to the Children in the summer of 2014; he sent a letter to the Children in the summer of 2015; and he sent one additional letter and made a single phone call to E.B. only shortly before the severance hearing. Although Father was employed while in prison, the Children did not receive any gifts or financial support from him during that time. Father had no contact with DCS outside of court hearings and provided no documentation to show he completed any services while incarcerated.

¶7 At the conclusion of the severance hearing, the juvenile court noted Father, by his own admission, had been "steadily incarcerated with the exception of a three-month period since 2008." The court found Father had not maintained a normal parental relationship with the Children for a period longer than six months, without just cause, and "paid no support, sent no cards, gifts, or letters, nor made any contact whatsoever with the children." Accordingly, the court determined DCS had proven abandonment by clear and convincing evidence. The court also found

---

4    Absent material changes from the relevant date, we cite a statute's current version.

severance to be in the Children's best interests and entered an order terminating the parent-child relationship. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8       A parent's rights to a child may be terminated if "the parent has abandoned the child." A.R.S. § 8-533(B)(1). Abandonment is defined as:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). In order to terminate a parent's rights to his children, abandonment must be proven by clear and convincing evidence. *See* Ariz. R.P. Juv. Ct. 66(C).[5] Father argues DCS failed to meet this burden. We disagree.

¶9       On appeal, Father does not dispute the juvenile court's factual findings, but he argues that severance was improper because any efforts he might have made to maintain a relationship with the Children were "doomed to fail" as a result of his incarceration. However, when circumstances prevent a parent from exercising "traditional methods of bonding with his child," that parent "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994) (citing *In re Raquel Marie X*, 559 N.E.2d 418, 428 (N.Y. 1990)). These principles apply where, as here, the parent, as a result of his incarceration, "has no immediate and obvious" tie to his children. *Id.* at 90-91, 97; *see Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 25 (2000). In the absence of such a requirement, "a young child languishes in limbo —

---

[5]     The juvenile court must also find by a preponderance of the evidence that severance is in the child's best interests, Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005), but Father does not argue insufficient evidence supports this finding.

surrendered by the mother, unclaimed by the father, and bonding with others — from which the law cannot extricate the child without lengthy proceedings compounding the harm." *S-114487*, 179 Ariz. at 97.

¶10 We do not doubt Father faced a significant challenge in establishing and maintaining a relationship with the Children — who ranged in age from one to four years old when Father was first incarcerated eight years ago — while in prison. But, the record does not demonstrate Father asserted his rights to the Children or acted to establish a relationship with them during that period. Although the case plan permitted Father to have supervised telephone calls with the Children and required him to build a relationship through cards, letters, and gifts, the entirety of Father's participation in the Children's lives during the nineteen months they were in an out-of-home placement consisted of one card, two letters, and one phone call. The Children received no gifts from him; nor did he provide financial support for the Children. He did not have any contact with the DCS caseworker outside of court hearings and left it entirely to DCS to request genetic testing of the children for whom paternity had not been established. *See id.* at 98-99 (noting a parent must "do more than just wait to respond" to the actions of other parties; "he need[s] to affirmatively *act* to establish his rights"). Incarceration alone does not justify a failure to make more than minimal efforts to support and communicate with a child, *Michael J.*, 196 Ariz. at 250, ¶ 21, and Father does not provide any other explanation for his failure to act.

¶11 Father also argues he did not abandon the Children because DCS failed to prove any "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." However, this "conscious disregard" standard has been rejected in cases where the parent has no existing relationship with the child. *See S-114487*, 179 Ariz. at 97. Instead, "we judge abandonment by conduct, *not* by subjective intent" and measure a parent's actions against the statutory definition of abandonment found in A.R.S. § 8-531(1). *Id.*; *see Michael J.*, 196 Ariz. at 250, ¶ 19. Here, reasonable evidence supports the juvenile court's determination that Father abandoned the Children. *See S-114487*, 179 Ariz. at 99 (affirming termination of parental rights on the basis that "the father abandoned the child because he failed to promptly and persistently grasp the opportunity to develop a relationship with his child or assert his legal rights").

¶12 Lastly, Father argues the circumstances giving rise to his inability to parent were not his fault, but that of "the government, when it sentenced him to prison." Contrary to Father's contention, however, Father

is solely responsible for the acts leading to his conviction and causing him to be removed from society. *Cf. Sherman/Bertram, Inc. v. Cal. Dep't of Emp't,* 21 Cal. Rptr. 130, 132 (Ct. App. 1962) ("[C]laimant's unemployment was the result of his own fault — his own willful and felonious act in leaving the scene of an accident in which he was involved without complying [with applicable law requiring him to stop].")*, cited with approval in Magma Copper Co., San Manuel Div. v. Ariz. Dep't of Econ. Sec.*, 128 Ariz. 346, 349 n.2 (App. 1981). To blame the criminal justice system for having denied Father his children by putting him in prison for his felonious conduct is nothing more than an exercise in sophistry. *See id.*

## CONCLUSION

¶13      The juvenile court's order terminating Father's parental rights to the Children is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama