[Civ. No. 25652.    Second Dist., Div. Two.    Apr. 24, 1962.]

SHERMAN BERTRAM, INC., Petitioner and Respondent, v. CALIFORNIA DEPARTMENT OF EMPLOYMENT et al., Defendants and Appellants.

Stanley Mosk, Attorney General, Edward M. Belasco and Henry G. Ullerich, Deputy Attorneys General, for Defendants and Appellants.

Eddy S. Feldman for Petitioner and Respondent.

FOX, P. J.—This is an appeal from a judgment directing the issuance of a writ of mandate commanding Irving H. Perluss, as Director of Employment, to vacate and set aside a decision of the California Unemployment Appeals Board which held that the unemployment insurance reserve account of respondent should be charged for the payment of unemployment insurance benefits to Thel McCaslin, a former employee of respondent.

The claimant, McCaslin, was employed by respondent on September 19, 1957, as a paint finisher. The last day he worked was April 28, 1958.

Subsequent to the last-mentioned date, McCaslin was involved in a hit and run accident and, as a consequence, was sentenced to jail for 30 days. His wife notified respondent-

employer immediately that McCaslin was in jail and requested that his job be held open. He was the only person employed by respondent who could perform the type of work for which he was classified, that is, as a paint finisher, with the exception of the supervisor in charge of the painting department. Claimant's wife was informed that the respondent would hold the job open unless the work got too far behind, in which event her husband would have to be replaced.

Claimant's position was held open by respondent for two weeks, at which time it became necessary to hire a replacement. Subsequent to claimant's release from jail on May 29, he attempted to return to his position on June 2, but respondent had filled the position two weeks prior to that time.

Notice of an unemployment insurance claim was mailed to respondent on June 12, 1958. On June 18 respondent protested the claim because the claimant had failed to report for work on April 29, 1958, a day duly scheduled for work, noting that claimant was necessarily replaced and noting further that respondent understood the claimant was in jail.

On June 25 the Department of Employment issued a determination and ruling, holding that the claimant was not discharged from the employment of respondent for misconduct connected with respondent's work. On July 3 the employer filed an appeal from this ruling. The matter was heard by a referee of the California Department of Employment. The referee affirmed the ruling of the department. On August 18 the employer filed an appeal from the decision of the referee to the California Unemployment Insurance Appeals Board, which affirmed the decision of the referee.

The trial court found that the employer was not guilty of any act of omission or any fault that resulted in claimant's quitting its employ. The court determined that "[t]he true issue was whether the claimant voluntarily quit his job without good cause." The court resolved this issue in the following language: "Claimant by his act voluntarily quit his job and without good cause." The court also found that appellants had abused their discretion in ordering the amount of unemployment compensation benefits paid to claimant to be charged to the reserve account of respondent. In this connection, the court concluded that appellants had abused their discretion in that the findings of the referee and the board are not supported by substantial evidence in the light of the whole record

nor are the findings or decision supported by the weight of the evidence.

The court further concluded that respondent was entitled to a judgment directing that a writ of mandate issue commanding appellants to vacate and set aside the decision of the appeals board and to remove the charges against the reserve account of respondent. It is from this judgment that appellants have appealed.

Section 100 of the California Unemployment Insurance Code provides, in part, "for the compulsory setting aside of funds to be used for a system of unemployment insurance *providing benefits for persons unemployed through no fault of their own. . . .*" (Emphasis added.) This is not a mere preamble to the code section. It is an integral part of it. This is declared by the legislature to be "a guide to the interpretation and application" of the code provisions covering unemployment benefits, and a part of the "public policy of this State" in such matters. ■ It is therefore established that *fault* is a basic element to be considered in interpreting and applying the code sections on unemployment compensation. (*Anson* v. *Fisher Amusement Corp.*, 254 Minn. 93 [93 N.W.2d 815]; *Grushus* v. *Minnesota Mining & Mfg. Co.*, 257 Minn. 171 [100 N.W.2d 516].)

■ Here claimant's unemployment was the result of his own fault—his own wilful and felonious act in leaving the scene of an accident in which he was involved without complying with the provisions of section 20001 [formerly § 480] of the Vehicle Code.* To say that claimant's wilful criminal act was not his fault and was not the cause of his unemployment is pure sophistry. To reward claimant in such circumstances by awarding him unemployment compensation is to reward him for idleness caused by his wilful violation of the law—and at the expense of his employer who had nothing whatever to do with it. This would be eminently unfair to the employer who had already undoubtedly suffered some incon-

---

*That section reads: "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004, and any person failing to stop or to comply with the requirements under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or both."

venience and expense in procuring and orienting a new "paint finisher" and it is also contrary to sound public policy. "Plainly," says the Supreme Court of Arizona (*Beaman* v. *Bench,* 75 Ariz. 345 [256 P.2d 721]), ". . . if one is . . . unemployed through fault of his own, he is not entitled to benefits under the Act" (which is identical in this respect with section 100 of the California Unemployment Insurance Code, referred to above).

Pertinent here in principle is *Grushus* v. *Minnesota Mining & Mfg. Co., supra.* In that case claimant had been employed by the company for approximately seven years. In January 1958 he was laid off for lack of work. Thereafter he applied for and received unemployment compensation. On August 19th he was called back to his job by his employer. He was unable to accept because of his incarceration on account of a charge of burglary and larceny to which he entered a plea of guilty. After claimant's release from jail he again sought unemployment benefits. In holding that he was disqualified from receiving such benefits, the court said: "During the time of his incarceration he was offered suitable work. His failure to accept the work was due to his own fault. The fact that he may not have intended to disqualify himself is not determinative. His illegal act resulting in his arrest and incarceration was the cause of his failure 'to accept suitable work when offered him.' It cannot be reasonably said that this was a 'good cause' for failure to accept work. A practical application of the facts compels the conclusion that the cause for failure to respond to the offer of work was not a 'good cause' and that such failure can be attributed to the employee's 'fault.' " (P. 520 of 100 N.W.2d.)

Appellants point out that the Unemployment Insurance Code relating to the disqualifications of applicants for benefits provides for only six disqualifications and argue that unless one of these provisions for disqualification applies to a given applicant for unemployment compensation benefits, the claimant should remain eligible if he otherwise qualifies. They then argue that none of the disqualifications apply to McCaslin, the claimant here. The first of these disqualifications is to the effect that an individual is disqualified from receiving unemployment compensation benefits if he voluntarily left his job without good cause. (Unemp. Ins. Code, § 1256.) In the case at bench the court found that the "[c]laimant by his act voluntarily quit his job and without good cause." The reason-

ing by which this conclusion is reached has been developed and applied by the appeals board in a number of its earlier cases and appears to us to be sound. The case of James Neal, Benefit Decision No. 5309, Case No. 10963, decided March 3, 1949, is illustrative. When it was shown in that matter that the claimant was incarcerated on a charge of assault, was convicted and confined to jail and was therefore unable to report for work, the appeals board declared:

"While it would appear that the claimant herein may not have actually intended to bring about his unemployment, he did, nevertheless voluntarily embark upon a course of conduct, the very nature of which he knew, or must be conclusively presumed to have known, would jeopardize his return to work within the allotted time. This despite the fact that as a seaman the claimant knew he had to be in condition to report to his vessel at the proper time if he expected to remain as a member of the crew. Accordingly, under the circumstances described herein, we conclude that the claimant's loss of employment was attributable to an act of volition on his part and in this respect tantamount to a voluntary leaving."

To the same effect see Charles J. Seeley, Benefit Decision No. 5685, Case No. 17131 (January 15, 1951) (violation of §§ 480 and 482, subd. (a) of the California Vehicle Code).

Raymond A. Cramer, Benefit Decision No. 5882, Case No. 19735 (April 24, 1952) (driving while intoxicated).

Oscar D. Klatke, Benefit Decision No. 5942, Case No. 20055 (October 24, 1952) (driving while intoxicated).

So, here, the claimant's loss of employment was the result of an act of volition on his part and tantamount to a voluntary leaving, and, as the court found, "without good cause." He is therefore disqualified from receiving unemployment compensation benefits under section 1256. (*Grushus* v. *Minnesota Mining & Mfg. Co., supra.*)

Appellants call attention to two matters (John Sylvester, Jr., Decision No. 5892—May 16, 1952 and Calvin D. King, Decision No. 5439—August 4, 1949) where the appeals board held that applicants did not voluntarily leave their last job by reason of their being confined in jail for violating the law. They say that the incarceration in these matters was "for a relatively short period," whereas the incarceration in the Neal, Seeley, Cramer and Klatke matters, *supra*, was for an extended period. We see no valid distinction in whether the

incarceration is lengthy or for a relatively short time. The true principle is whether the claimant's loss of employment was attributable to an act of his own volition and thus tantamount to a voluntary leaving.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.