[Civ. No. 14658. Fourth Dist., Div. One. June 14, 1976.]

LEVI A. JEFFERSON, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
SAN DIEGO GAS AND ELECTRIC COMPANY,
Real Party in Interest and Respondent.

**COUNSEL**

Theodore A. Cobb and Victor Harris for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and William R. Winship, Jr., Deputy Attorney General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**BROWN (Gerald), P. J.**—Levi A. Jefferson appeals a judgment denying a writ of mandate which would set aside a determination of the California Unemployment Insurance Appeals Board (Board) disqualify-

ing him for unemployment compensation benefits. Jefferson attacks the applicability and constitutionality of Unemployment Insurance Code section 1256.1, which was the basis for his disqualification.

The facts of the case are not in dispute. Under circumstances unrelated to his employment, Jefferson was charged with driving under the influence of alcohol. He pleaded guilty to the charge and was sentenced to serve 180 days in jail.

In order to arrange his affairs, Jefferson did not work the day before his term was to commence. He contacted his union and his superintendent about the possibility of utilizing accumulated sick leave, vacation, and leave of absence time in order to maintain his job during his incarceration.

In jail, Jefferson learned of a work furlough program in which he could be released during working hours and maintain his job. He applied for the program, but his application was never approved because his employment was terminated before the application could be considered. The grounds for his discharge were failure to report to work, absenteeism, and incarceration.

The day after his release from jail, Jefferson applied for unemployment compensation benefits. The Department of Human Resources Development (Department) denied his application, stating as its grounds: "You were terminated from your last employment because you were incarcerated . . . for an act which you voluntarily committed. Under these circumstances, it must be held that you voluntarily left work without good cause."

This decision was appealed to a referee of the Board. Jefferson was represented by counsel and testified in his own behalf. The referee affirmed the action of the Department, and Jefferson appealed to the Board. The Board also affirmed, and Jefferson petitioned the trial court for a writ of mandate, alleging section 1256.1, subdivision (a), of the Unemployment Insurance Code, the foundation of the Board's position, was inapplicable and unconstitutional. The writ was denied.

Section 1256.1, subdivision (a), provides: "If the employment of an individual is terminated due to his absence from work for a period in excess of 24 hours because of his incarceration and he is convicted of the offense for which he was incarcerated or of any lesser included offense,

he shall be deemed to have left his work voluntarily without good cause for the purposes of Section 1256. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, is deemed to be a conviction within the meaning of this section irrespective of whether an order granting probation or other order is made suspending the imposition of the sentence or whether sentence is imposed but execution thereof is suspended."

Section 1256 declares in pertinent part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work."

█ Noting section 1256.1 is framed in the past tense—"for which he was incarcerated," Jefferson first argues the section does not literally apply to him. He urges the language can only include those persons whose incarceration antedated conviction. Since he went to jail after his conviction, he argues, the statute does not apply. We reject this construction because "no law is to be construed in such a manner as to result in a palpable absurdity." (*People* v. *Black*, 45 Cal.App.2d 87, 94 [113 P.2d 746].) We cannot ascribe to the Legislature the intent to deny compensation to individuals terminated because of incarceration before conviction but to permit compensation to individuals terminated because of incarceration after conviction. "Interpretation must be reasonable." (Civ. Code § 3542.) Accordingly, we hold section 1256.1 encompasses all cases of termination due to absence from work for a period in excess of 24 hours because of incarceration incident to conviction as defined by the statute, whether such incarceration precedes or follows conviction.

Having concluded section 1256.1 applies to this case, we turn to Jefferson's constitutional arguments. █ First he contends the statute creates an arbitrary, irrebuttable presumption that one who is terminated as a result of absence from work due to conviction and incarceration "left his work voluntarily without good cause for the purposes of Section 1256." Since this presumption denies him the opportunity for a full and fair hearing at which he might present facts bearing on whether he actually left his work voluntarily without good cause, Jefferson claims he is deprived of due process of law guaranteed by the Fourteenth Amendment to the federal Constitution and corresponding provisions of the California Constitution. The argument is buttressed by numerous federal decisions invalidating statutory irrebuttable presumptions in other contexts.

At first blush this contention seems appealing. Jefferson's repeated efforts to maintain his job are inconsistent with the statute's characterization of him as having "left his work voluntarily." He left his work because he went to jail, and few people do that voluntarily. On closer examination, however, the characterization of which Jefferson complains has no real legal significance.

Section 1256.1, subdivision (a), characterizes Jefferson as having "left his work voluntarily without good cause *for the purposes of Section 1256.*" (Italics added.) The only consequence of being deemed to have left work voluntarily without good cause under section 1256 is disqualification for unemployment compensation benefits. Reading sections 1256.1 and 1256 together, we conclude the Legislature intended simply to disqualify those, like Jefferson, who are terminated because of absenteeism following conviction and incarceration.[1] ██ Viewing the sections together, the characterization of such persons as having left work voluntarily without good cause is but an inconsequential, even if imprecise, minor premise.[2] We therefore hold section 1256.1, despite its appearance, establishes an independent ground of disqualification for unemployment compensation benefits.

[1]"If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. (Citations.) The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Miller* v. *Municipal Court*, 22 Cal.2d 818, 828 [142 P.2d 297].)

[2]Case law before the enactment of section 1256.1 may explain why a circuitous formula was drafted to achieve a simple purpose. In *Sherman Bertram, Inc.* v. *California Dept. of Employment*, 202 Cal.App.2d 733 [21 Cal.Rptr. 130], a paint finisher lost his job when he was incarcerated as a result of his involvement in a hit-and-run accident. The Court of Appeal held unemployment compensation was properly denied because "the claimant's loss of employment was the result of an act of volition on his part and tantamount to a voluntary leaving, and, as the court found, 'without good cause.' He is therefore disqualified from receiving unemployment compensation benefits under section 1256." (*Id.*, at p. 738.) Such reasoning had been developed and applied by the Board in earlier cases (*id.*) and was substantially codified by the later enactment of section 1256.1.

Interestingly, the Supreme Court of Michigan, analyzing similar factual patterns in light of a statute similar to section 1256, concluded an individual who is terminated because of incarceration does *not* voluntarily leave without good cause. (See *Sullivan* v. *Appeal Board Michigan Emp. Sec. Com'n.*, 358 Mich. 338 [100 N.W.2d 713]; *Michigan Emp. Sec. Com'n.* v. *Appeal Bd. of Mich. E. S. C.*, 356 Mich. 665 [97 N.W.2d 784].)

The Michigan Legislature reversed this common law rule by enacting a statute providing in pertinent part: "If an individual loses his job by reason of being absent from

Since it does not matter, as we interpret sections 1256.1 and 1256, whether Jefferson actually left work voluntarily without good cause, the lack of a hearing on the question was not a deprivation of due process of law. He was disqualified for unemployment benefits because he was terminated for absence from work as a result of conviction and incarceration, and he was afforded a hearing on the facts relating to that basis for disqualification.

Jefferson also contends section 1256.1 deprives him of equal protection of the laws guaranteed by the Fourteenth Amendment and corresponding provisions of the California Constitution. He raises this argument from his view of the statute, which is the Legislature intended to disqualify only those who had voluntarily left work without good cause and unconstitutionally, conclusively presumed he had voluntarily left. ■ For the reasons expressed we have rejected Jefferson's view, and we therefore analyze whether the independent ground for disqualification created by section 1256.1 is consistent with equal protection guarantees.

The section defines and separately treats a class of persons who are discharged for absence from work due to conviction and incarceration and disqualifies such persons for unemployment compensation. We conclude this classification bears a rational relation to the purposes of the legislation (*Brown* v. *Merlo*, 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]).

Section 100 of the Unemployment Insurance Code declares the public policy of the state with regard to unemployment compensation. It provides in pertinent part: "The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed *through no fault of their own,* and to reduce *involuntary* unemployment and the suffering caused thereby to a minimum." (Italics added.)

---

work as a result of a violation of law for which he has been convicted, and sentenced to jail or prison, *such individual shall be disqualified for benefits* for the week of such loss resulting from detention pursuant to sentence of any court and for the duration of his unemployment thereafter. . . ." [Italics added.] (*Alexander* v. *Michigan Employment Security Comm.*, 4 Mich.App. 378 [144 N.W.2d 850, 852]; see Annotation, 58 A.L.R.3d 674, 792-798.) The Michigan statute clearly created an independent ground for disqualification. Section 1256.1, as we construe it, accomplishes the same.

This declaration was included in the code "[a]s a guide to . . . interpretation and application" of other sections (Unemp. Ins. Code § 100). "Accordingly, fault is the basic element to be considered in interpreting and applying the code sections on unemployment compensation." (*Rowe v. Hansen,* 41 Cal.App.3d 512, 521 [116 Cal.Rptr. 16]; *Sherman Bertram, Inc.* v. *California Dept. of Employment, supra,* 202 Cal.App.2d 733, 736.)

In light of the purpose of the statutory scheme, the legitimacy of section 1256.1 is apparent. Unemployment compensation was not intended for those who instigate their own unemployment. The clearest example is when an employee leaves his work voluntarily without good cause (Unemp. Ins. Code § 1256). Less clear perhaps is the situation in which an employee is discharged for misconduct connected with work (Unemp. Ins. Code § 1256). Yet case law establishes that only willful, wanton, or equally culpable conduct can be the basis for disqualification, i.e., "[t]he test for misconduct is essentially volitional."[3] (*Rowe v. Hansen, supra,* 41 Cal.App.3d 512, 521.) The Legislature has determined persons who are terminated as a direct result of their criminal behavior and incarceration are not "unemployed through no fault of their own" and are therefore ineligible for benefits. The classification is reasonable and bears a rational relation to the objective of unemployment compensation law.

Judgment affirmed.

Ault, J., and Cologne, J., concurred.

A petition for a rehearing was denied June 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied August 12, 1976.

---

[3]"[M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." (*Rowe v. Hansen, supra,* 41 Cal.App.3d 512, 520; see also *Jacobs* v. *California Unemployment Ins. Appeals Bd.,* 25 Cal.App.3d 1035 [102 Cal.Rptr. 364].)