Filed 6/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| UNITED EDUCATORS OF SAN FRANCISCO AFT/CFT, AFL-CIO, NEA/CTA, <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD, <br><br>      Defendant, Cross-defendant and Appellant; <br><br> SAN FRANCISCO UNIFIED SCHOOL DISTRICT, <br><br>      Real Party in Interest and Respondent. | A142858 <br><br> (San Francisco City & County Super. Ct. No. CPF 12-512437) |
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, <br><br>      Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD, <br><br>      Defendant and Appellant. | A143428 <br> (San Francisco City & County Super. Ct. No. CPF 12-512437) |

Plaintiff United Educators of San Francisco AFT/CFT, AFL-CIO, NEA/CTA (UESF) petitioned the superior court for a writ of administrative mandate on behalf of certain of its members who were employed by the San Francisco Unified School District (District). UESF contended that these members—all of whom had been provided reasonable assurance of continued employment in the fall of 2011—were improperly

denied unemployment benefits during the summer of 2011. The petition was successfully opposed below by the District. In a companion appeal, the California Unemployment Insurance Appeals Board (CUIAB) challenges a separate ruling in favor of the District invalidating a precedent benefit decision that would have permitted public school employees to receive unemployment benefits during summer months provided certain conditions are met. We affirm the lower court as to both rulings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. *Background and Administrative Rulings*

The parties have stipulated to the following facts. UESF is a union that is the exclusive representative of the District's certificated employees and classified paraprofessional employees. In the academic year 2010-2011, the District employed UESF member Aryeh B. Bernabei and 10 others as substitute teachers who worked on an on-call or as-needed basis.[1] The District also employed UESF member Celina R. Calvillo and 14 others as paraprofessional classified employees.[2] Paraprofessional classified employees are not paid during summer months unless they are retained for a summer session or perform special tasks, such as custodial services. Each of the 26 employees received a letter during the spring of the 2010-2011 school year advising that they had a reasonable assurance of employment for the following 2011-2012 school year.

The last date District schools operated during the regular session of the 2010-2011 school year was May 27, 2011. The first day of instruction for the 2011-2012 school year was August 15, 2011. The District operated a summer school session that began on June 9, 2011 and ended on July 7, 2011 for elementary school students and ended on July 14, 2011 for middle and high school students. The District did not offer any

---

[1] The other named substitute teacher employees are Arthur A. Calandrelli, Mark J. Fiore, Doug Jones, Stephen S. Kaslikowski, Tyree Leslie, Luis A. Novoa, Jose M. Rios, Linda Weil, Gladys L. Wong, and Natalia Yuzbasheva.

[2] Other named paraprofessional classified employees are Kevin A. Batiste, Stephanie R. Brooks, Jose S. Ferrer, Remigio Flood, Emily I. Frances, Jose D. Hernandez, Shan L. Lei, Martha C. Letona, Jonathan B. Matthews, Paul L. Michaels, Joseph R. Moreland, David J. Picariello, Frances F. Smith, and Lester L. Rubin.

instruction between May 27, 2011 and June 9, 2011, or between July 14, 2011 and August 15, 2011.

The UESF members described above filed claims for unemployment benefits for the period of time between May 27, 2011 and August 15, 2011. The Employment Development Department (EDD) denied benefits to each named claimant. The claimants appealed to a CUIAB administrative law judge (ALJ) who reversed the EDD and held that each claimant was entitled to benefits covering all the weeks for which they had applied.

The CUIAB reversed the ALJ's decisions as to each of the claimants, either in whole or in part.[3] The CUIAB held that the entire summer session was a "recess period" as defined in Unemployment Insurance Code[4] section 1253.3, subdivision (b), a provision that restricts public school employees' eligibility for unemployment benefits if they have been given reasonable assurance of continued employment.[5] It also held, however, that if

---

[3] "In California, the unemployment insurance (UI) program consists of three phases: (1) UI claims are submitted to and initially processed by the [EDD] [citation]; (2) any appeal from EDD's benefit determination is heard by an [ALJ] employed and assigned by the [CUIAB] (referred to as the 'first-level appeal'); and (3) any appeal of the ALJ's determination is submitted to and decided by the appellate division of the CUIAB based upon the record, including the transcript of the hearing before the ALJ (referred to as the 'second-level appeal')." (*Acosta v. Brown* (2013) 213 Cal.App.4th 234, 238.)

[4] All further statutory citations are to the Unemployment Insurance Code except where indicated otherwise.

[5] We note the statute does not contain the term "recess period." Section 1253.3, subdivision (b) provides, in relevant part: "Benefits . . . based on service performed in the employ of a nonprofit organization, or of any entity as defined by Section 605, with respect to service in an instructional, research, or principal administrative capacity for an educational institution *are not payable* to any individual with respect to *any week* which begins during the period *between two successive academic years or terms* . . . if the individual performs services in the first of the academic years or terms and *if there is a contract or a reasonable assurance that the individual will perform services . . . in the second of the academic years or terms.*" (Italics added.) Section 1253, subdivision (c), is similarly worded and applies to persons employed "in any other capacity than specified in subdivision (b) for an educational institution."

an individual claimant had been employed during the 2010 summer session, he or she had a "reasonable expectation" of employment during the 2011 summer session. Based on this reasoning, the CUIAB held that unemployment benefits could be paid to such employees for days not worked during the 2011 summer school session, but not for the days when school was not actually in session.[6]

## II.     *Trial Court Proceedings*

On September 6, 2012, UESF filed a first amended petition for writ of administrative mandamus against the CUIAB as respondent and the District as real party in interest. UESF asserted the 2011 summer school session was an "academic term" under section 1253.3, contending all 26 claimants were eligible for benefits between May 27, 2011 and August 15, 2011, because the District had not provided reasonable assurance of employment for the 2011 summer session, instead providing such assurance for the 2011-2012 academic year that started August 15, 2011.

On October 26, 2012, the District filed a cross-complaint seeking declaratory relief against both the CUIAB and UESF. The District asserted the CUIAB erroneously determined that employees who receive notices of reasonable assurance of employment for the next academic year or term are nonetheless eligible for summer unemployment benefits by virtue of either having worked during the prior summer school session, or having an availability or expectation of procuring work during the current summer session.

On December 10, 2013, the CUIAB adopted its decision in *Alicia K. Brady v. Ontario Montclair School District* (2013) CUIAB Precedent Benefit Decision No. P-B-505 (*Brady*) as a precedent benefit decision.[7] In *Brady,* the CUIAB held that

---

[6] The CUIAB also held that employees who were called to work for a portion of the summer session could receive benefits for any days during the session that they did work. As the trial court noted in its statement of decision, each of the 26 cases has factual distinctions; however, the differences are immaterial in light of our resolution of this matter.

[7] Precedent benefit decisions may be issued when the CUIAB's ruling involves an important issue of law. (§ 409; Gov. Code, § 11425.60.)

4

substitute teachers who are "qualified and eligible for work" during a school district's summer school session are not on recess for purposes of section 1253.3 and are eligible for unemployment benefits.

On January 31, 2014, the District filed a first amended cross-complaint in response to the *Brady* decision. In addition to maintaining its challenge to the UESF members' claims by seeking declaratory relief, the District alleged that *Brady* was wrongly decided and requested the trial court declare the decision invalid under section 409.2.[8]

On August 15, 2014, the trial court filed its judgment denying UESF's petition. The court incorporated its statement of decision into the judgment and made an express finding as follows: "This Court finds that . . . [section] 1253.3 means that unemployment benefits, so long as an employee has the contract or reasonable assurance required by [section] 1253.3, are 'not payable to any individual with respect to any week between' the end of one academic year and the beginning of the next (1) whether that week (or those weeks) is called 'summer recess,' 'summer vacation,' 'summer vacation period,' 'summer school,' 'summer session,' or anything else, (2) whether that individual is any type of employee of any educational institution . . . , be she or he any permanent teacher, any substitute teacher, any non-teacher employee, or any other job classification covered by [section] 1253.3, and (3) whether or not any employee in any job classification covered by [section] 1253.3 is 'eligible' or 'qualified' for work, is 'on a list,' has a 'reasonable expectation of work' during the summer, is 'available' for work during the summer, or worked during the prior summer.' " After so finding, the court reversed the CUIAB's decisions and remanded them with instructions to find the claimants not eligible for the unemployment benefits requested. The court also invalidated *Brady* to the extent it is inconsistent with the court's decision. That ruling is the subject of the CUIAB's appeal, which has been consolidated with UESF's appeal.

---

[8] Section 409.2 provides: "Any interested person or organization may bring an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1."

## DISCUSSION

### I.      Standard of Review

"  'Interpretation and applicability of a statute or ordinance is clearly a question of law.'  [Citation.]  It is the duty of an appellate court to make the final determination from the undisputed facts and the applicable principles of law." (*Sutco Construction Co. v. Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228.)  Here, the facts are undisputed and the issues on appeal center on the interpretation of section 1253.3.  We therefore apply the de novo standard.

### II.      The Unemployment Insurance Program

"California's unemployment insurance program, as promulgated by the Unemployment Insurance Code, is part of a national system of reserves designed to provide insurance for workers 'unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.'  [Citation.]  Under the Unemployment Insurance Code, the state participates in a cooperative unemployment insurance program with the federal government, codified as the Federal Unemployment Tax Act." (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1024.)

As currently codified, the Federal Unemployment Tax Act (26 U.S.C. §§ 3301–3311) (FUTA) requires that a state's unemployment law must contain a provision similar to 26 United States Code section 3304(a)(6)(A)(i),[9] which prohibits employees of

---

[9] 26 United States Code section 3304(a)(6)(A)(i) provides, in relevant part:  "The Secretary of Labor shall approve any State law submitted to him, . . . which he finds provides that—  [¶] . . . [¶]. . . compensation is payable on the basis of service . . . in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service . . .; except that— [¶] . . . with respect to services in an instructional, research, or principal administrative capacity for an educational institution . . . compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms . . . to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services . . . for any educational institution in the second of such academic years or terms."  Subparagraph (ii)(I) of this subsection extends similar conditions to

educational institutions from collecting unemployment benefits between and within academic terms: "The [FUTA] was substantially amended by Public Law No. 94-566, which was enacted by the Congress in 1976. [Citation.] Public Law No. 94-566 amended section 3309(a)(1) of the [FUTA] to extend eligibility for unemployment compensation benefits to certain employees of state and local governments within the several states. [Citation.] It also amended section 3304(a) of the [FUTA] to include the corresponding provisions of state law to be exacted of conforming states upon review by the Secretary of Labor. Subsection (6)(A) of section 3304(a) was thus amended to provide in effect that public school employees might be eligible for benefits 'except' in certain instances involving their unemployment during periods of summer recess at the employing schools. Subparagraph (i) of the amended subsection requires in effect that a conforming state *must deny eligibility for summertime benefits to a professional school employee* (such as a teacher), at any grade level, if there is 'a contract' providing for his or her reemployment in the fall or 'reasonable assurance' of such reemployment. Subparagraph (ii) of the amended subsection provides in effect that a conforming state *may deny eligibility for summertime benefits to a nonprofessional school employee* at a subcollegiate grade level . . . if there is 'reasonable assurance' (only) of his or her reemployment in the fall." (*Russ v. Unemployment Ins. Appeals Bd.* (1981) 125 Cal.App.3d 834, 843, italics added (*Russ*).)

The California Legislature responded to the 1976 amendment to the FUTA by amending section 1253.3: "In the 1978 enactment which amended section 1253.3 . . . , the California Legislature expressly declared that it was 'necessary to implement Public Law 94-566' [citation]; i.e., that it was 'necessary' to keep the unemployment compensation program of this state in conformity with the [FUTA] as amended in 1976. Consistent with this purpose, the Legislature amended subdivisions (a) and (b) of the statute to incorporate the successively mandatory provisions of the first paragraph of

nonprofessional school employees if there is "reasonable assurance" of reemployment in the second academic year or term.

subparagraph (i) of subsection (6)(A) of section 3304(a) of the amended [FUTA]; [and] amended subdivision (c) of the statute to incorporate an optional provision authorized by subparagraph (ii) of the subsection . . . ." (*Russ, supra,* 125 Cal.App.3d at p. 844.)

### III.     *The Superior Court's 2005 Decision and Ruling*

Preliminarily, the appealing parties note the trial court did not render its decision in a vacuum. On October 1, 2013, UESF filed a request for the court to take judicial notice of a 2005 superior court ruling, *San Francisco Unified School District v. California Unemployment Insurance Appeals Board* (Super. Ct. S.F. City and County, 2005, No. CPF 05-504939), rendered by now-retired Judge James L. Warren. It appears that the court granted the request for judicial notice because it explicitly declined to give the prior ruling res judicata effect. The 2005 case differs from the instant case in that the claimants in the prior case sought unemployment benefits for the period when summer school was in session only, whereas the claimants in the instant case seek benefits that would cover the entire period between the conclusion of the regular school term of 2010-2011 and the beginning of the regular school term in 2011-2012.

In the 2005 case, Judge Warren considered whether to grant a petition for writ of mandate filed by the District against the CUIAB. The CUIAB had found 10 substitute teachers eligible for unemployment insurance benefits after they were unable to obtain work during the six-week summer school term in 2003. In the course of denying the District's petition, Judge Warren agreed with the CUIAB that the teachers' period of unemployment did not occur " 'between two successive academic years or terms' " under section 1253.3, subdivision (b) because "in California, there is no gap between successive academic years."

Judge Warren noted the Legislature "did not define the 'academic year' " in section 1253.3. He then observed, " 'Year,' of course, has a common sense meaning of 365 days. Consistent with this common sense meaning, the Legislature has defined a 'school year' as running from July 1 to June 30 . . . ."[10] The Legislature has stated that

---

[10] See Education Code section 37200.

'academic year' and school year are synonymous in at least some contexts. . . .[11]  By contrast, petitioner has not identified any potentially applicable California legislation that defines 'academic year' as something less than a 'year.'  In light of these authorities, considering the underlying purposes of the unemployment insurance code as a whole and § 1253.3(b) in particular, and giving appropriate deference to the CUIAB's interpretation, the court holds that the CUIAB's interpretation of 'academic year' is correct."  Judge Warren found the teachers' period of unemployment "did not begin 'between two consecutive academic terms,' " concluding that the District's six-week summer school session was an "academic term" for purposes of section 1253.3 because "educational instruction was provided to students" and "at least some teachers were employed to provide that instruction . . . ."

UESF and the CUIAB contend principles of res judicata and collateral estoppel make Judge Warren's opinion binding on the District.  Although the doctrine of collateral estoppel and the concept of res judicata have distinct meanings (see *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 179 (*Union Pacific*)),[12] both require a strict identity of the issues being litigated.  (*Ibid.*; *Kilroy v. State of California* (2004) 119 Cal.App. 4th 140, 149.)  We note the issues in the 2005 case and the present case are not precisely identical.  In the 2005 case, the question was whether the six-week summer session constituted an academic term.  In the present case, the eligibility question is broader in that it includes the weeks before and after the summer session.[13]

---

[11] See Education Code sections 22169 and 25926.

[12] Res judicata is claim preclusion and collateral estoppel is issue preclusion. (*Union Pacific, supra,* 231 Cal.App.4th 134 at p. 179.)

[13] UESF, somewhat inconsistently, argues that while the CUIAB and the District are bound by the Judge Warren's 2005 conclusion that "summer session" is an "academic term," the judge's ruling "did not go far enough."

9

UESF also contends Judge Warren's decision is in line with the Legislative public policy of "protecting the unemployed."[14]  It also faults the court below for failing to account for the temporary status of substitute teachers and temporary employees, who, unlike "regular, permanent and probationary certificated and classified employees," do not have tenure or contracts guaranteeing their return in the fall semester.  We conclude the trial court properly declined to give Judge Warren's ruling res judicata effect.  Notably, the 2005 opinion makes no reference to relevant federal law.  Federal law, however, is essential to understanding section 1253.3 because, as noted above, this statute was substantially amended in response to the 1976 FUTA legislation.

A prior determination is not conclusive where the issue is purely a question of law if injustice would result or if the public interest requires relitigation of the issue.  (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257.)  As our Supreme Court has explained, "In *City of Sacramento v. State of California* (1990) 50 Cal.3d 51, we allowed the state to relitigate the issue of whether extension of the state's unemployment insurance law to include state and local governments constituted a reimbursable state mandate.  We noted that the state was the losing party in the earlier litigation and that it was the only entity legally affected by the earlier judgment.  'Thus, strict application of collateral estoppel would foreclose any reexamination of the holding of that case.  The state would remain bound, and no other person would have occasion to challenge the precedent.'  [Citation.]  We observed, however, that ' "when the issue is a question of law rather than of fact, the prior determination is not conclusive either if

---

[14] Section 100 "declares the public policy of the state with regard to unemployment compensation.  It provides in pertinent part:  'The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.' " (*Jefferson v. Unemployment Ins. Appeals Bd.* (1976) 59 Cal.App.3d 72, 78, italics omitted.)

10

injustice would result or *if the public interest requires that relitigation not be foreclosed.*" ' " (*Kopp v. Fair Pol. Practices Com*. (1995) 11 Cal.4th 607, 621–622.)

Applying this rule to the facts, in *City of Sacramento v. State of California, supra*, 50 Cal.3d 51, the Supreme Court concluded: "[T]he consequences of any error transcend those which would apply to mere private parties. If the result of [the earlier litigation] is wrong but unimpeachable, taxpayers statewide will suffer unjustly the consequences of the state's continuing obligation to fund [the state mandate]. On the other hand, if the state fails to appropriate the funds to meet this obligation, and [the law extending unemployment insurance requirements to local governments] cannot be enforced [citations], the resulting failure to comply with federal law could cost California employers millions." (*Id.* at pp. 64–65.)

Similarly, here the issue to be relitigated involves public funding. An inaccurate interpretation of section 1253.3 might award unemployment benefits to employees who actually fall within the statute's exclusion. The potential impact of an erroneous statutory interpretation extends beyond San Francisco. All school districts in this state offering summer school programs are potentially affected. A correct reading of section 1253.3 is therefore critical to prevent the misdirection of public funds.

## IV.    *Interpretation of Section 1253.3*

Consistent with the FUTA, section 1253.3 provides that unemployment benefits are *not* payable to credentialed public school personnel for any week "which begins during the period *between two successive academic years or terms* . . . if the individual performs services in the first of the academic years or terms *and if there is a contract or a reasonable assurance* that the individual will perform services for any educational institution in the second of the academic years or terms." (*Id.*, subd. (b), italics added.) The companion provision applicable to nonprofessional employees is essentially identical, stating that unemployment benefits are not payable for any week "which commences during a period *between two successive academic years or terms* if the individual performs the service in the first of the academic years or terms *and there is a*

11

*reasonable assurance* that the individual will perform the service in the second of the academic years or terms." (*Id.*, subd. (c), italics added.)

The parties dispute the meaning of "academic years or terms." The trial court here concluded that the statutory language unambiguously provides that public school employees who are employed in the spring term, and have received reasonable assurance of reemployment for the following fall term, are not eligible to receive unemployment insurance benefits during the intervening summer, regardless of whether their school district offers a summer session. As we discuss below, we agree.

The principles of statutory interpretation are well settled: "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.) "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People v. Knowles* (1950) 35 Cal.2d 175, 183.)

As UESF acknowledges, the thesis of its appeal "is that the summer session that was conducted by the [District] in June and July of 2011 constituted an 'academic term' for purposes of [section] 1253.3. Since [its members] were not given reasonable assurance of employment in the summer session, the letters that they did receive were not

12

sufficient for the purpose of denying them unemployment benefits during their unemployment in the summer."[15] UESF maintains that none of its members were ever on summer vacation, but instead were "simply unemployed and hoping to return to their jobs." It claims the CUIAB took inconsistent positions in the 26 cases, asserting the CUIAB "should have acknowledged that the summer session is an academic term for all employees, not merely for employees who had worked in the previous summer session."

The CUIAB took a more nuanced approach, finding that if an individual was not called to work during the summers of 2010 and 2011, the entire 2011 summer period was a "normal . . . recess period" as to that individual and they were not entitled to benefits. And even if a claimant had a reasonable expectation of summer work, such as by virtue of having worked during the prior summer, he or she was not eligible for benefits during the weeks between the end of the summer session and the beginning of the fall term, which the CUIAB deemed a "recess period." However, the CUIAB did allow benefits during summer school sessions for those teachers in whom the District had "created an expectation of employment."

Observing neither Congress nor the Legislature makes reference to summer school in the relevant statutes, UESF submits they "neither intended that summer school be considered an academic term nor that summer session was not an academic term." UESF asserts it is our task to "determine how summer session must be treated under the existing statutory structure." We decline this invitation: "The role of the courts is not to legislate or to rewrite the law, but to interpret what is before them." (*Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 187.) In our view, neither UESF's nor the CUIAB's positions are consistent with the language and purpose of section 1253.3.

---

[15] UESF asserts we must read section 1253.3 narrowly because the District's reasonable assurance letter "is merely a pro forma letter that is sent to everyone who has not been outright fired for cause or who has not resigned or retired." Even if this is true, we note the statute does allow employees to claim benefits retroactive to their last day of work if it turns out that they do not obtain work in the fall. (See § 1253.3, subd. (c).)

13

We conclude summer school is not an "academic term" within the meaning of section 1253.3's reference to "academic years or terms." Both UESF's and the CUIAB's interpretations of section 1253.3 are contrary to the plain meaning of the statute. The CUIAB asserts that because "academic year" is not defined in the statute, it must be given its "ordinary and usual meaning." It is true that while the term "school year" is defined in the Education Code as a 365-day period (see Ed. Code, § 37200 ["The school year begins on the first day of July and ends on the last day of June."]), there is no corresponding definition of "academic year." However, "ordinary meaning" in this context is best derived from the Education Code.

As the District notes, the Education Code establishes a mandatory period of instruction of no fewer than 175 days. The term "academic year" is used in a provision relating to the calendaring for year-round schools: "The teaching sessions and vacation periods established pursuant to Section 37618 shall be established without reference to the school year as defined in Section 37200. The schools and classes shall be conducted for a total of no fewer than 175 days *during the academic year*." (Ed. Code, § 37620, italics added.)

As pointed out by amicus curaie the California School Boards Association's Education Legal Alliance (ELA), the California Department of Education (CDE)—the regulatory body charged with interpreting and enforcing the Education Code—treats the traditional academic calendar to mean the period when school is regularly in session for all students, and does not include summer or summer school.[16] Further, during the academic year, the Legislature has provided for compulsory education laws that mandate

_____

[16] We grant the ELA's request for judicial notice of the CDE's Year-Round Education Program Guide. That guide includes the following passage: "Both traditional and some year-round school calendars can have 180 days of instruction. *The traditional calendar, of course, is divided into nine months of instruction and three months of vacation during the summer.* Year-round calendars break these long instructional/ vacation blocks into shorter units. The most typical instructional/vacation year-round pattern is called the 60/20 calendar (60 days of instruction followed by 20 days of vacation[)] and the second most popular is the 45/15."

14

public schools to provide instruction, and that allow certificated employees to receive credit toward permanent status. (See, e.g., Ed. Code, §§ 37620, 41420, 48200, 44913.)[17] In contrast, historically, offering summer school has been permissive, attendance voluntary, and permanent employment status has not accrued. (Former Ed. Code, § 37252.) Additionally, as the trial court noted in its statement of decision, when the FUTA was enacted, summer school sessions held between academic years were already a common feature. If Congress had intended to allow for the recovery of benefits during the summer, it could have explicitly so indicated.

Treating an intervening summer session as an "academic term" also renders the reasonable assurance language in section 1253.3 meaningless and inoperable. The term "academic year" cannot reasonably be read to mean "calendar year" or otherwise include the summer period between mandatory academic terms. As the trial court noted, "If the 'academic year' truly ran the entire calendar year . . . , a 'period between two successive academic years' could never exist." Because such a reading would render the phrase "period between two successive academic years" meaningless, it is to be disfavored. In sum, we conclude summer sessions are not academic terms and instead fall between academic years or terms under section 1253.3. The trial court thus correctly ruled that none of the claimants here were eligible for benefits.

## V. *The Majority of Other Jurisdictions are in Accord*

Other jurisdictions considering virtually identical statutory provisions have reached the same conclusion as we do here. As our courts have recognized, where state unemployment insurance codes mirror the federal law and each other, " 'the

---

[17] For example, Education Code section 44913 provides: "Nothing in Sections 44882 to 44887, inclusive, [former] Sections 44890, 44891, Sections 44893 to 44906, inclusive, and Sections 44908 to 44919, inclusive, shall be construed as permitting a certificated employee to acquire permanent classification *with respect to employment in a summer school* maintained by a school district, and service in connection with any such employment shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of the district. . . ." (Italics added.)

15

interpretation placed on that language by federal and other courts is unusually persuasive . . . .' " (*Board of Education of the Long Beach Unified School Dist. v. Unemployment Ins. Appeals Bd.* (1984) 160 Cal.App.3d 674, 685 (*Long Beach*).)

In *In re Claim of Lintz* (N.Y.App.Div. 1982) 89 A.D.2d 1038, 1039 (*Lintz*), the New York Supreme Court Appellate Division addressed our same issue: "The [unemployment insurance] board's holding that because claimant chose to teach two days a week during a five-week summer session she was 'not between academic terms' and, therefore, eligible, is both irrational and unreasonable and thwarts the clear legislative intent. The law was . . . not enacted to supplement the income of a regularly employed teacher who chose to teach a few days during her regular summer vacation while awaiting the commencement of the next academic year for which she had unquestioned assurance of employment."[18]

The Oregon appellate courts have also concluded the term "academic year" does not include summer school sessions: "We conclude that 'academic year' . . . means the traditional fall-through-spring sessions of an educational institution. The fact that claimant worked in the summer of 1981 and hoped to work in the summer of 1982 and the fact that the University operated on a limited basis during summer terms do not preclude this conclusion. That an employee of an educational institution may choose to work during what is traditionally vacation time does not make it a part of the academic year, and an abbreviated summer session can and regularly does co-exist with a traditional academic year. [The unemployment board] correctly determined that

---

[18] A subsequent New York opinion followed *Lintz*, *supra*, 89 A.D.2d 1038, with respect to a temporary registration clerk who was laid off during a summer session but rehired for the following fall term: "We perceive no error in the Board's reliance on [*Lintz*], which held that a summer session is not considered an academic term . . . . Hence, the Board properly ruled that claimant was ineligible for benefits . . . since her period of unemployment was between two successive academic years or terms and there was reasonable assurance that she would be rehired to aid in registrations for the next succeeding term . . . ." (*In re Claim of Alexander* (N.Y.App.Div. 1988) 136 A.D.2d 788, 789.)

16

claimant's summer suspension of work constituted . . . a period between academic years." (*Friedlander v. Employment Div.* (Or.Ct.App. 1984) 676 P.2d 314, 318.)

Also, in *Campbell v. Department of Employment Sec.* (Ill.Ct.App. 1991) 570 N.E.2d 812, 819, the Illinois appellate court held that a college professor's "employment or lack of employment during the summer months is irrelevant [in determining eligibility] because the applicable Federal and State statutes [citations] were designed to address the common academic practice of instructors not teaching during the summer months." More recently, the Hawaii Court of Appeals held: "A substitute teacher who teaches during the regular school year is not eligible for unemployment benefits during the summer break even when one or more summer school substitute teaching positions was or were available and unsuccessfully sought." (*Harker v. Shamoto* (Hawaii Ct.App. 2004) 92 P.3d 1046, 1055].)[19]

In a Nebraska Supreme Court case involving a reversed factual context, a teacher had worked during successive summer school sessions only, *not* during the traditional school year. (*School District No. 21 v. Ochoa* (Neb. 1984) 342 N.W.2d 665.) The court considered whether two successive six-week summer school sessions were "regular terms" under that state's unemployment laws, such as to exclude benefits during the 46 weeks falling between those two periods. (*Id.* at p. 667.) The school district argued that

---

[19] Additional out-of-state cases that have reached the same conclusion include: *Herrera v. Industrial Claim Appeals Office* (Colo.Ct.App. 2000) 18 P.3d 819, 820 (food service worker was ineligible to receive benefits during the summer break between the two successive academic years); *Doran v. Department of Labor* (Ill.Ct.App. 1983) 452 N.E.2d 118, 122 (teacher who had taught an eight-week summer course not entitled to benefits when the summer session was later eliminated because summer constituted "a period between academic terms"); *DeLuca v. Commonwealth* (Pa.Commw. 1983) 459 A.2d 62, 64 (teacher who was not offered his usual summer position due to budget cuts deemed ineligible for benefits: "Neither section of the Law at issue herein contains any language limiting its applicability to unemployment *resulting* from the period between terms."). Jurisdictions finding summer session to be an academic term are solidly in the minority. (See, e.g., *Evans v. Employment Sec. Dep't* (Wn.Ct.App. 1994) 866 P.2d 687, 688, recently distinguished in *Thomas v. Employment Sec. Dep't* (Wn.Ct.App. 2013) 309 P.3d 761, 765.)

17

the summer session was a "regular term" and asserted the teacher was disqualified for benefits between those terms because she had a reasonable assurance she would perform services during the following summer. (*Id.* at p. 668.) The court held that the teacher was entitled to benefits because her period of unemployment did not occur between two successive years or terms. (*Ibid.*) In sum, we concur with the majority of out-of-state jurisdictions that in the context of a traditional school year, the terms "academic year" and "academic term" exclude summer sessions.

## VI.    *Brady Decision*

It follows that we concur with the trial court's decision to invalidate *Brady*, *supra*, CUIAB Precedent Benefit Decision No. P-B-505. In *Brady,* the CUIAB held that when a school district deems a claimant qualified and eligible for work during a summer school session, he or she is also eligible for unemployment benefits because the claimant is not on recess during that period. We conclude the trial court properly invalided this aspect of *Brady* in ruling on the District's separate action, initiated pursuant to section 409.2. "[E]ven though a court will give great weight to the agency's view of a statute or regulation, the reviewing court construes the statutes as a matter of law and will reject administrative interpretations where they are contrary to statutory intent." (*American Federation of Labor v. Unemployment Ins. Appeals Bd*. (1994) 23 Cal.App.4th 51, 58.)

For example, in *Long Beach, supra,* 160 Cal.App.3d 674, the appellate court upheld a superior court ruling invalidating a CUIAB precedent decision under section 409.2. (*Long Beach*, at p. 682.) In that case, CUIAB had relied "on the tenuous impermanent nature" of a substitute teacher's employment in finding he did not have reasonable assurance of continued employment. The appellate court observed: "There is nothing in section 1253.3 which sets as a criteria the tenuous nature of a substitute teacher's position as a basis for determining the 'reasonable assurance' issue." (*Id.* at p. 683.) Similarly, in the present case, there is nothing in section 1253.3 suggesting any exceptions to the rule that school employees who receive reasonable assurance of continued employment are not entitled to unemployment benefits between the spring and fall academic terms.

18

The practical effect of the *Brady* decision would assure that employees who place themselves on an on-call list for summer but who, like permanent staff generally, do not actually work during that summer, will recover unemployment benefits. Both sets of employees are not working, yet under *Brady* one group is eligible for unemployment benefits while the other is not. Section 1253.3 does not make any exceptions for employees who choose to make themselves available for summer work, and we decline to read such an exception into the statutory language.

The CUIAB itself acknowledges that in enacting the FUTA Congress "had envisioned that many public school teachers would be employed from Fall through Spring, and on recess during the summer. Congress did not wish to award these employees a double-payment—one for their usual salary paid throughout the whole year and another for unemployment benefits in the summer." Yet CUIAB's construction of 1253.3 would accomplish just that. Under its rationale, any teacher with an expectation of obtaining work during the summer session would be entitled to unemployment benefits if they were not hired (or if they were hired but not retained for the entire summer session). However, that same teacher would not be " 'unemployed' in the sense of being attached to the general labor force which is seeking other employment on a permanent basis" (*Long Beach, supra,* 160 Cal.App.3d at p. 690, fn. 7.) As the *Long Beach* court observed: " 'Plainly and simply stated, teachers [including substitute teachers] between academic terms or semesters are not unemployed. They are on vacation.' " (*Id.* at p. 688.)

The CUIAB also contends that "the meaning [of academic year], in a particular district, is a question of fact." In other words, districts that opt to offer summer school can define "academic year" differently from districts that do not. We agree with ELA that the CUIAB's position "turns statutory construction and the enforcement of laws on their head." While the application of a law to different factual situations may produce varying results, the meaning of statutory language must exist as a constant. In our view, both Congress and the Legislature intended that all school employees who understand their regular employment will occur during the fall and spring terms are not entitled to

19

benefits during the summer break. That some school districts may offer separate summer employment opportunities to certain of its workers does not alter this result.

## CONCLUSION

We are not unsympathetic to the loss of wages incurred during periods of academic hiatus. However, in effect what the claimants in this case are requesting is that the government should provide them with a full year's income because they have agreed to work and be paid for only 41 weeks of each year. As one court has explained, "The rationale for this limitation [on benefits] is that school employees can plan for those periods of unemployment and thus are not experiencing the suffering from unanticipated layoffs that the employment-security law was intended to alleviate." (*Baker v. Department of Employment & Training Bd. of Review* (R.I. 1994) 637 A.2d 360, 363.) This rationale "promotes reasonable public policy interests, but if there are other policy concerns that now advise the adoption of a different rule, it is up to the Legislature to craft one." (*In re Marriage of Davis* (2015) 61 Cal.4th 846, 865.)

## DISPOSITION

The judgment is affirmed.

_____
DONDERO, J.

We concur:


_____
MARGULIES, Acting P. J.


_____
BANKE, J.

| | |
|---|---|
| Trial Court | San Francisco City and County Superior Court |
| Trial Judge | Hon. Richard B. Ulmer, Jr. |
| Counsel for Plaintiff and Appellant United Educators of San Francisco AFT/CFT, AFL/CIO, NEA/CTA | Weinberg, Roger & Rosenfield Stewart Weinberg |
| Counsel for Defendant, Cross-defendant and Appellant California Unemployment Insurance Appeals Board | Kamala D. Harris, Attorney General, Julie Weng-Gutierrez Senior Assistant Attorney General, Susan M. Carson and Beverley R. Meyers, Deputy Attorneys General |
| Counsel for Real Party in Interest and Respondent San Francisco Unified School District | Burke, Williams & Sorensen, LLP John R. Yeh |
| Counsel for Amicus Curiae California School Board Association Education Legal Alliance on behalf of Real Party in Interest and Respondent | Liebert Cassidy Whitmore Laura Schulkind Michael Youril |